**Carlo F. Olivero, Plaintiff-Appellee, v. Horace Mann Mutual Insurance Company, a Corporation, Defendant-Appellant.**

### Gen. No. 11,844.

Third District.

February 17, 1964.

Peterson, Johnson & Martin, of Princeton (Watts C. Johnson and Donald C. Martin, of counsel), for appellant.

McNeilly & Olivero, of Peru (Lewis E. Olivero, of counsel), for appellee.

SCHEINEMAN, J.

This is an appeal by defendant from a judgment in the amount of $1,052.15 in favor of plaintiff in an

action to recover hospital expenses and surgical costs under the provisions of a health and accident insurance policy.

The policy contains a table entitled HOSPITAL BENEFITS setting forth the maximum amounts payable for specific number of days confined to the hospital up to a total of 20 days and a further payment of $9 per day from the 21st day through the 365th day. There was also a surgical expense endorsement entitled SCHEDULE OF OPERATIONS, which lists the following items:

| | |
|---|---|
| Maximum Tissue Repair | $112.50 |
| Varicose Veins (bilateral) | 112.50 |
| Maternity Care, Obstetric Delivery | 90.00 |

There was also a rider attached entitled FAMILY HOSPITAL EXPENSE RIDER WITH MATERNITY BENEFITS, and provided:

"Under this rider, obstetrical cases shall be covered after 10 months from the effective date of this rider. Indemnity payable for hospitalization as the result of pregnancy or childbirth shall be limited to 10 days."

It is not disputed that the plaintiff was hospitalized for 4 days, November 1 to November 5, 1959, for pregnancy at term and that she delivered a baby and was discharged. She returned to the hospital November 7, 1959, because of thrombophlebitis. Because of this ailment she was in the hospital continuously for 48 days and was then discharged. The defendant refuses to pay any of the hospital or medical bills for this 48-day period, on the ground the policy did not apply. The plaintiff then filed this suit.

 The defendant takes the position that the illness of the plaintiff at her second hospitalization was the result of pregnancy and that the maternity benefit rider excluded coverage for that condition. The first

contention is based upon the testimony of a doctor called by defendant who gave an opinion that there was a direct relationship between her existing infirmity and her delivery on November 1, 1959. On cross-examination he was asked whether he would say her infirmity could not have come from many other sources. He answered, "No, I will say that she could have gotten it from another source." The deposition of her treating physician introduced by agreement of counsel shows it is very doubtful that the thrombophlebitis was connected with the pregnancy and delivery.

The treating physician who had delivered of her, three babies, over a period of time, said she never had any indications of thrombophlebitis, and moreover, while that disease may result from pregnancy, it would usually be below the knee. In her case it was above the knee, and it is apparent from this testimony that it is rather unlikely to be caused simply by the delivery of a child.

The main argument for the defendant is that the thrombophlebitis was the result of the pregnancy and apparently regards that as settling the case.

This overlooks the wording of the maternity benefit rider. The limitation as stated is "Indemnity payable for hospitalization as the result of pregnancy or childbirth shall be limited to 10 days." The ordinary meaning of these words would be that coverage was provided if she went to the hospital for childbirth or for a stillbirth. There is no statement that any and all after effects that may arise as a result of pregnancy will also be excluded, and we do not regard that interpretation as a reasonable inference. If that is what the policy intended, it could have said so.

In the interpretation of words in an insurance policy, it is the usual rule that the terms will be taken and understood according to the plain and generally ac-

cepted meaning. Moscov v. Mutual Life Ins. Co. of New York, 387 Ill 378, 56 NE2d 399; Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill 576, 30 NE2d 66.

On the other hand: "Ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured." Lenkutis v. New York Life Ins. Co., 374 Ill 136, 28 NE2d 86.

This citation was quoted in Mosby v. Mutual Life Ins. Co. of New York, 405 Ill 599, 92 NE2d 103. The court added: "This is a sound rule. It recognizes the realities of the transaction, that is, that the provisions of an insurance policy are not the product of negotiations between the insurer and insured but are written by the insurance company and out of necessity, perhaps, submitted for acceptance without change. It is nevertheless the contract of the parties and from it we must find what was meant by the words used."

Applying this principle, we are of the opinion that the wording of the exclusion in its generally accepted meaning would be that the limitation of 10 days applies only to the pregnancy or childbirth period which caused the hospitalization. She first went to the hospital as the result of pregnancy, and the coverage would be limited to 10 days for that purpose. Her later return to the hospital is an entirely different condition, she was not pregnant and was not about to give birth to a child. Thus we arrive at the conclusion that it is immaterial whether there was some connection between the subsequent disease and the prior child delivery.

Another point made by the defense is that there was no proof of the amount of the hospital bills and medical expenses. This argument overlooks the fact that the court did not purport to allow the actual expenses but only the limited amounts set forth specifically in the policy.

100

In its brief the defendant states as to the second period in the hospital: "For this period of hospitalization, the plaintiff apparently received a total charge from the hospital in the amount of $1,340.87." This is nearly twice as much as was allowable under the terms of the policy. The original suit claimed damage in the sum of $3,600. The amended complaint reduced this to $1,340.87, but this did not include the physician's services and covered only the hospital charges.

The complaint also alleged that notice was given the defendant of the loss, and proof of loss was furnished on January 11, 1960. The answer admitted this allegation.

In spite of this the attorney included in his answer a denial of any knowledge of these costs, sufficient to form a belief. It would appear that his client failed to disclose to him all of the information it had. If he had received this information, he would have perceived that the actual bills rendered were more than could be recovered under the policy, and for this reason there would be no purpose in introducing evidence of the actual charges.

The judgment of the court below allowed only the amounts specified in the policy, including hospital benefits for 20 days being $350, the additional 28 days at $9 per day, for a total of $602. The medical fee fixed by the policy was limited to $112.50 in spite of the long period in the hospital.

There was also an anesthetist's fee in the sum of $37.50 bringing the total amount allowed by the court to $752. As to the $37.50, we agree that the trial court made a slight error. The figure $37.50 is the maximum for an anesthetist in any case, but there was another limitation that it should not be more than 25 per cent of the surgical costs. This would make the actual allowable fee $28.13. The trial court also allowed a claim for interest at 5 per cent and taxed 25 per cent

of the surgical and hospital expense as plaintiff's attorney's fees under a provision of the insurance code authorizing attorney's fees in case of vexatious delay.

■ Since the amount due December 25, 1959, was fixed by an instrument in writing, the addition of 5 per cent interest to the date of judgment was proper. That period being for 2 years and 11½ months, the interest amounts to $109.86 on the allowed hospital and surgical expense totaling $742.63, as revised.

■ We do not interpret the statute allowing attorney's fees in case of vexatious delay to be applicable in all cases simply because the defendant was unsuccessful in the litigation. There is an obvious ambiguity in the policy. The company acted on the advice of competent counsel, which they were entitled to do, until there was a court ruling to the contrary. For this reason we regard the allowance of interest as a sufficient award without taxing attorney's fees in any proportion. Therefore, the attorney's fees are disallowed.

Accordingly, the judgment is affirmed in part and reversed in part, and remanded with directions to reduce the judgment to the sum of $852.49 as of the date of the original judgment.

Affirmed in part reversed in part and remanded.

CULBERTSON, P. J. and ROETH, J., concur.