**Donald HELMICH, Plaintiff-Appellant,**

v.

**NORTHWESTERN MUTUAL INSUR-
ANCE CO., Defendant-Appellee.**

**No. 15879.**

United States Court of Appeals
Seventh Circuit.

April 21, 1967.

Edward Keefe, Coyle, Stengel, Gilman
& Keefe, Rock Island, Ill., for appellant.

Frank G. Schubert, Gerry M. Rinden,
Moran, Klockau, McCarthy, Schubert &
Lousberg, Rock Island, Ill., for appellee.

Before HASTINGS, Chief Judge, and
SWYGERT and FAIRCHILD, Circuit
Judges.

SWYGERT, Circuit Judge.

Donald Helmich, a citizen of Illinois,
commenced this declaratory judgment ac-

tion in the Circuit Court of Rock Island County, Illinois against Northwestern Mutual Insurance Company, a Washington corporation. The action was removed to the federal district court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1441. In his complaint the plaintiff requested a declaration that under a policy of automobile liability insurance issued by the defendant to the plaintiff's father, Burnell Helmich, the plaintiff was entitled to a defense of certain actions and coverage, in the event of liability, resulting from a collision in DeKalb County, Illinois on January 6, 1962. The plaintiff also sought an adjudication that the defendant's refusal to defend him in these actions was "vexatious and without reasonable cause" within the meaning of Ill.Rev.Stat. ch. 73, § 767, thus entitling him to an award of attorneys' fees. The plaintiff appeals from a judgment of the district court dismissing his complaint. The principal question concerns the interpretation of an exclusion clause in the insurance policy.

The facts are not in dispute. The plaintiff was a student at the University of Wyoming concluding a holiday vacation at his parents' home in Park Ridge, Illinois. On January 6, 1962, the plaintiff, desiring to obtain transportation back to the university, contacted George Tetzlaff, also of Park Ridge. Tetzlaff was an automobile buyer who purchased automobiles as an agent for various dealers throughout the country and who customarily arranged for the transportation and delivery of the purchased automobiles through "drive-away" agencies.[1] Tetzlaff informed the plaintiff that he had purchased an automobile in Evanston, Illinois for A & B Motors Company, Denver, Colorado and stated that the plaintiff could deliver the automobile to its new owner.

The plaintiff signed a contract produced by Tetzlaff. The agreement provided that the plaintiff was to drive the car from Chicago to Denver, there to deliver it to A & B Motors. The contract did not require the plaintiff to select any particular route, nor did it prescribe any other details with respect to the time or manner of travel. It did require, however, that the car be delivered to its destination within twenty-four hours after arrival in Colorado. It was also understood that the plaintiff was to bear the initial expenses of gasoline and oil for the trip. The contract provided that, in return for his efforts, the plaintiff was to receive thirty dollars from A & B Motors upon delivery of the automobile (intended as an allowance toward gas and oil expenses), plus his transportation to Denver.[2]

After signing the agreement, the plaintiff picked up the automobile in Evanston, returned to Park Ridge to pack his belongings, and began his journey. A short time later the automobile was involved in a collision.

The insurance policy issued by the defendant to the plaintiff's father, as the named insured, was in effect at the time of the accident. There is no question that the plaintiff, as a "relative" residing in the household of the named insured, was an "insured" person covered by the liability provisions of the policy with respect to the operation of "non-owned" automobiles. The defendant

---

1. Several months earlier, the plaintiff had responded to a newspaper advertisement inserted by a Chicago "drive-away" agency seeking the delivery of an automobile to Salt Lake City. On that occasion the plaintiff was referred to Tetzlaff, who provided a car which the plaintiff drove to Salt Lake City en route to his destination at the University of Wyoming. On the occasion in question the plaintiff bypassed the "drive-away" agency and went directly to Tetzlaff.

2. The contract also provided that "title, ownership, and insurance coverage of this automobile rests with" A & B Motors. Tetzlaff testified that the "customary arrangement" was one in which he, Tetzlaff, provided collision insurance for the automobile and the dealer to whom the car was being delivered provided liability insurance.

denied coverage on the basis of the following exclusion contained in the policy:

> This policy does not apply * * * (h) to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured except a private passenger, farm or utility automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile.

"Automobile business" is defined in the policy as "the business or occupation of selling, repairing, servicing, storing or parking of automobiles."

The defendant's position is that the exclusion clause is subject to only one interpretation, that its obvious intention is to make the use to which the automobile itself is being put the controlling factor in determining whether the automobile is being "used in the automobile business." According to the defendant, because the automobile was involved in the "selling process" at the time of the accident, it was being used in the automobile business, and because the insured was operating the vehicle at that time, the exclusion applies. The plaintiff, on the other hand, contends that the exclusion clause is ambiguous and that the ambiguity must be resolved in his favor. The plaintiff argues that the phrase "other business or occupation of the insured" in subsection (2) indicates that the "automobile business" in subsection (1) refers to a business operated by the insured or one in which the insured is otherwise employed. The word "other" is meaningless unless it refers to an antecedent business of the insured. Thus, the plaintiff contends, it is the character of the insured's use of the non-owned automobile that determines whether the vehicle was being "used in the automobile business by the insured" at the time of the accident.

The district court's general approach to the question was in accord with that urged by the plaintiff, at least insofar as the court considered it necessary to determine whether the insured was "engaged" in the automobile business when the accident occurred. The court held, however, that the plaintiff was excluded from coverage under both subsections (1) and (2). As to subsection (1) the court stated that the plaintiff, at the time of the accident, was "engaged" in the automobile business because he was the "servant, agent, or employee" of Tetzlaff, who was in the business of "selling" automobiles. In addition, the court stated that the plaintiff was engaged in an "other" business under subsection (2), namely, that of "transporting" automobiles. The court relied upon Caster v. Motors Ins. Corp., 28 Ill.App.2d 363, 171 N.E.2d 425 (1961), and Walker v. State Farm Mut. Auto. Ins. Co., 40 Ill. App.2d 463, 190 N.E.2d 121 (1963).[3] We think the court erred in its conclusions that the plaintiff was engaged in the automobile business and the business of transporting automobiles, and we hold that the exclusion clause in the insurance policy issued by the defendant is not applicable under the facts of this case.

As the plaintiff points out, there is an ambiguity inherent in the use of the word "other" in the phrase "or in any other business or occupation of the insured" following the exclusion from coverage of non-owned automobiles used "in the automobile business by the insured." The ambiguity is presented because the words "by the insured" standing alone would tend to indicate that, for the exclusion to become applicable, the insured need not have an interest or be otherwise employed in the "automobile business" in which the non-owned automobile is being used. The insertion of the word "other", however, suggests that only the use of a non-owned automobile in an "automobile business" in which the insured is financially interested is excluded

---

3. The parties agree that the substantive law of Illinois governs this case.

from coverage.[4] The resolution of this ambiguity in favor of the plaintiff is dictated both by general principles of construction and by the intended application of similar exclusion clauses.

First, the provisions of an insurance policy are construed strictly against the insurer, as their drafter, and ambiguities are invariably resolved in favor of the insured. Littrall v. Indemnity Ins. Co., 300 F.2d 340 (7th Cir.), cert. denied, 370 U.S. 919, 82 S.Ct. 1558, 8 L.Ed.2d 499 (1962); Caster v. Motors Ins. Corp., supra. Second, exclusion clauses such as that in the instant case are designed to require an insured who uses non-owned automobiles in furtherance of his business or occupation to seek additional coverage for the added risks incident to such use. In Pollard v. Safeco Ins. Co., 52 Tenn.App. 583, 376 S.W.2d 730, 734 (1963), the court, commenting upon automobile-business exclusion clauses, stated that "such exclusionary clauses are sustained as reasonable and binding on the insured 'because of the increased hazard growing out of the use of non-owned cars by [automobile] establishments while in their legal custody.'" The court added: "It would be grossly unfair to the insurer to hold that an insured engaged in the automobile business could take out a policy on his privately owned and operated car and then on the basis of the same small premium claim protection for any and all non-owned automobiles used in such business." Ibid. The pertinent inquiry in interpreting automobile-business exclusion clauses, therefore, in harmony with their general purpose, should be one of determining the relationship, if any, between the insured's use of the non-owned automobile and some business or occupational interest of the insured. This principle is borne out by Caster v. Motors Ins. Corp., supra.

In *Caster,* one Dempsey borrowed an automobile from an automobile agency for his personal use over a week-end to determine whether he was interested in purchasing it. Dempsey later exchanged cars with a friend, Woodside, in order to obtain the latter's recommendations. While Woodside was driving the automobile, he caused its total destruction. Woodside had a policy of insurance in effect at the time of the accident. The policy provided coverage for non-owned automobiles but it contained a clause with respect to such automobiles excluding coverage for "any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage, or public parking place." In a declaratory judgment action by the automobile agency against Woodside's insurer it was held that the exclusion did not apply and that therefore coverage existed. The decision was affirmed on appeal, the court stating:

> It would be a distortion of the language of the exclusion to conclude that the exclusion applies under the record in this case since the accident did not arise out of the operation of an automobile sales agency. The obvious interpretation of that exclusion must have particular reference to the occupation of the named insured, and if the insured is engaged in any of those businesses he must purchase a different type of insurance or insure himself against loss for damage which would occur to automobiles of his customers while he or one of his agents is operating the customer's car. 28 Ill.App.2d at 367, 171 N.E.2d at 427.

Walker v. State Farm Mut. Auto. Ins. Co., supra, did not question the *Caster* decision in any respect and is of no more than general relevance. *Walker* concerned the application of an exclusion clause

---

4. The defendant notes that an exclusion clause in which the phrase "while used in the automobile business" appeared was found not to be ambiguous in Walker v. State Farm Mut. Auto. Ins. Co., 40 Ill. App.2d 463, 190 N.E.2d 121 (1963). The phrase by itself is not ambiguous. The ambiguity here is created by the surrounding text and the peculiar facts. Further, in *Walker* it was admitted that the insured was engaged in the automobile business, that it was the insured's business, and that the automobile was being used in the business at the time of the accident.

to an automobile owned by the named insured, who had a policy which provided coverage for permissive use of his automobile by others but which excluded coverage for the automobile "while used in the automobile business." The named insured permitted his son, who operated a gasoline service station, to use the automobile. The son, in the company of a friend, drove the car to a nearby town to exchange an oil filter from his stock at the service station for another filter. While there, the two men stopped for lunch at a restaurant they occasionally patronized. On the return trip, the automobile was involved in a collision, as a result of which a judgment for injuries was secured against the named insured. In a garnishment proceeding against the insurance company it was held that the automobile-business exclusion was inapplicable. On appeal, the judgment was reversed. The court noted that the driver of the automobile was admittedly engaged in the automobile business. It held that the exclusion clause applied because "the use of a vehicle for the transport of repair parts to be used in the business of the driver is an activity directly connected to the carrying on of his business * * *." 40 Ill.App.2d at 466–467, 190 N.E.2d at 122.[5]

█ The other cases cited by the defendant in support of its position that the automobile itself is the controlling element in interpreting automobile-business exclusion clauses are also decisions concerning the application of such clauses to automobiles owned by the named insured. E. g., Chavers v. St. Paul Fire & Marine Ins. Co., 188 F.Supp. 39 (N.D. Ohio 1960), aff'd, 295 F.2d 812 (6th Cir. 1961); Universal Underwriters Ins. Co. v. Strohkorb, 205 Va. 472, 137 S.E.2d 913 (1964); Nationwide Mut. Ins. Co. v. Federal Mut. Ins. Co., 204 Va. 879, 134

S.E.2d 253 (1964). But cf., Hodapp v. Shelby Mut. Ins. Co., 166 So.2d 772 (Fla. App.1964). It is apparent that different considerations are applicable to such cases. Where the named insured's automobile is being used by another with the insured's permission, the use of the automobile itself is logically the principal determinant of whether any coverage exists; where the insured is operating a non-owned automobile, however, it is the fact that the insured is the operator which provides the basis for coverage. In this case coverage is predicated upon the plaintiff's status as an insured person by virtue of his membership in the household of the named insured. The exclusion clause derives its potential applicability solely from the insured and should be interpreted accordingly.

The question thus becomes whether the plaintiff was engaged in his own automobile business or any other business of his own, or whether the automobile business or any other business was the "occupation" of the plaintiff at the time of the accident. Clearly, none of these circumstances existed. The only automobile business involved was that of A & B Motors in Denver, through its buyer-agent Tetzlaff in Park Ridge. The plaintiff's connection with that business was isolated and incidental. Nor was the plaintiff otherwise employed or occupied in the automobile business or in any other business within the general meaning of such terms. A business or occupation imports regular, habitual effort undertaken for profit or the production of income. "In the absence of a clear showing therein to the contrary, it must be assumed that the word automobile 'business' as used in the exclusionary clause means business in the ordinary accepted sense—that is an undertaking engaged in with some regularity and for profit and income." Cherot v. United

5. In rejecting a contention that the exclusion was inapplicable because the automobile was also being used for the personal benefit of its occupants in connection with their lunch, the court stated: "It makes no difference that the car may have been used at the same time for other purposes as well as the business of the service station. The exclusion is not limited to the situation where the sole use of the car is in connection with the business." Walker v. State Farm Mut. Auto. Ins. Co., 40 Ill.App.2d 463, 467, 190 N.E. 2d 121, 122 (1963).

States Fidelity & Guar. Co., 264 F.2d 767, 769, 71 A.L.R.2d 959 (10th Cir. 1959).

■ The plaintiff was a student not engaged in any business. The contract entered by him for the delivery of the automobile to Denver was a bailment and not a contract of employment. The plaintiff was not subject to control or direction with respect to accomplishing the purpose of his trust. He did not become the "servant, agent, or employee" of Tetzlaff, as found by the district court. The isolated transaction by virtue of which the plaintiff was enabled to gain return transportation to his place of study did not change his status for purposes of the insurance policy, nor was the risk created thereby essentially different from the range of risks generally contemplated· by insurance companies in affording family-purpose coverage. Thus, although the automobile driven by the plaintiff was in the "selling process" of an automobile business,[6] that business was not the "business or occupation" of the plaintiff. The exclusion clause is therefore not applicable.

■ The plaintiff also contends that he is entitled to attorneys' fees under Ill.Rev.Stat. ch. 73, § 767 because the defendant's refusal to provide coverage for the plaintiff's potential liability was "vexatious and without reasonable cause." This contention is without merit. The defendant's denial of the plaintiff's claim cannot be termed vexatious and without reasonable cause. Holbrook v. Institutional Ins. Co., 369 F.2d 236, 242 (7th Cir. 1966); Olivero v. Horace Mann Mut. Ins. Co., 46 Ill.App.2d 97, 102, 196 N.E.2d 366 (1964).

The judgment of the district court is affirmed insofar as it denies the plaintiff's request for attorneys' fees. In all other respects the judgment is reversed.

HASTINGS, Chief Judge (concurring).

I concur in the result reached in the majority opinion written by Judge Swygert in this case.

---

6. The conclusion that the automobile was being used in the automobile business within the meaning of the policy is also open to some question. As noted earlier, the policy defines "automobile business" as the business of "selling, repairing, servicing, storing or parking of automobiles." The district court found, alternatively, that the plaintiff was in the business of "transporting" automobiles. In Goforth v.

Allstate Ins. Co., 220 F.Supp. 616, 618 (W.D.N.C.1963), aff'd, 327 F.2d 637 (4th Cir. 1964), the court noted that the insertion of the word "transporting" in a similar definition for purposes of an exclusion clause would have been easy to supply. The court said that the omission of the word "implies an intent not to enlarge the exclusion" and held the omission fatal.