**UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Plaintiff,**

v.

**DIXIE AUTO INSURANCE COMPANY, a corporation, et al., Defendants.**

Civ. A. No. CA 67–3.

United States District Court
N. D. Alabama,
Southern Division.

Feb. 16, 1968.

Ollie Blan, Jr., of Spain, Gillon, Riley, Tate & Ansley, Birmingham, Ala., for plaintiff.

David E. Hicks of Cato & Hicks, Percy B. Watkins, Schuyler A. Baker of Baker, McDaniel & Hall, Birmingham, Ala., for defendants.

### OPINION IN LIEU OF FORMAL FINDINGS UNDER RULE 52 F.R.C.P.

GROOMS, District Judge.

This is a diversity action and the jurisdictional facts alleged are not controverted.

Plaintiff United States Fidelity & Guaranty Company (hereinafter called USF&G) seeks a declaration of the rights and liabilities between it and Dixie Auto Insurance Company (hereinafter called Dixie Auto) respecting the defense of certain suits filed by W. H. Brown, Mrs. W. H. Brown, Earl Rolland and Janice F. Rolland (hereinafter called claimants) against Jerald McMurrey, Vernie B. McMurrey, and O. Z. Hall Motors Incorporated arising out of an automobile accident on April 9, 1966.

USF&G had in force on the date of the accident a policy of comprehensive general-automobile liability insurance issued to O. Z. Hall Motors Incorporated (hereinafter called Hall Motors). Hall Motors was a business engaged in selling, repairing and servicing new and used cars. Dixie Auto had in force on the date of the accident a policy of family automobile liability insurance issued to Jerald McMurrey covering a 1955 Buick automobile owned by Jerald McMurrey.

On April 9, 1966 Vernie B. McMurrey, the wife of Jerald McMurrey was driving a 1965 Ford Galaxie owned by Hall Motors and was involved in an accident with a car driven by Janice F. Rolland in which Mrs. W. H. Brown was riding as a passenger. Both Mrs. Rolland and Mrs. Brown were injured and they and their husbands filed suits in the state courts in Birmingham claiming damages against the McMurreys and Hall Motors. The McMurreys demanded that USF&G defend them in the suits claiming they were additional insureds under the USF&G policy issued to Hall Motors. USF&G refused to defend them and filed this action contending that the McMurreys were not covered under the USF&G policy as they had coverage under the Dixie Auto policy.

Dixie Auto's answer admitted its policy but denied that it provided any coverage to the McMurreys because its policy excluded coverage when an accident involving a non-owned automobile arose out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place. Dixie Auto further contended that even if it covered the McMurreys its coverage was made excess over the coverage of USF&G.

The claimants and Hall Motors were made defendants and filed answers admitting some of the allegations and denying others.

The Court was notified prior to trial that USF&G had settled the suits of the claimants and had paid the settlement amounts to them. Dixie Auto stated to the Court that it agreed that the amounts paid were reasonable. The Court finds that the settlements are without prejudice to the rights of either USF&G or Dixie Auto in this declaratory judgment proceeding.

The Court sitting without a jury heard the testimony presented by the parties and having considered the pleadings, the testimony, the evidentiary matter in the case, the requests for admissions and the failure to file answers thereto, the copies of the insurance policies, and having heard the oral arguments of the parties, makes the following:

## FINDINGS OF FACT

On the evening of Friday, April 9, 1966, Jerald McMurrey and his wife, Vernie, went to Hall Motors for the purpose of buying a truck. Terms were agreed upon between the McMurrey's and Hall Motors for the purchase of a 1966 Ford F–100 pickup truck. The agreement included the trade-in of the 1955 Buick owned by the McMurreys and the financing of the balance.

The sale could not be completed that evening as Hall Motors had to obtain credit approval of Mr. McMurrey. It was agreed that the McMurreys would return the next afternoon and if their credit was approved, the sale would then be completed and they would receive delivery of the truck.

The sales manager of Hall Motors directed that the McMurreys leave their 1955 Buick and he furnished for their use a 1965 Ford Galaxie owned by Hall Motors. This car was selected at random from the used car lot. No restrictions were placed upon the use of this car and it was to be returned the next afternoon.

The car owned by Hall Motors was furnished to the McMurreys for two reasons (1) to prevent the trade-in from being damaged or stripped before the sale was completed, and (2) to discourage the customer from shopping the deal by going elsewhere, and to insure his return to Hall Motors.

The McMurreys used the car owned by Hall Motors on Friday evening and Saturday for their personal business and in the same manner they would have used the 1955 Buick.

On Saturday afternoon the McMurreys were on their way to Hall Motors with Mrs. McMurrey driving when they were involved in the accident with the car driven by Mrs. Janice Rolland.

The basic USF&G policy did not insure the McMurrey's. An endorsement added additional insureds as follows:

"any of the following persons while using such automobile with the permission of the Named Insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission: (a) any employee, director or stockholder of the Named Insured, any partner therein and any resident of the same household as the Named Insured, such employee, director, stockholder or partner,

(b) any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person."

The Dixie Auto policy extended coverage to Mr. and Mrs. McMurrey while they were driving a car other than the 1955 Buick owned by Mr. McMurrey, under the following provision:

"V. Use of Other Automobiles:

If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is provided by this policy, under Coverages A, B, and Division 1 of Coverage C with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured and spouse, and (2) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization."

The exclusion relied on by Dixie Auto is as follows:

"(c) This insuring agreement does not apply:

(2) to any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place; * * * "

Dixie Auto also relies on Condition 14 of its policy which is designated as Other Insurance:

" * * * provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insurance Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

There are two primary questions for determination by the Court. (1) Did the accident on April 9, 1966 arise out of the operation of an automobile sales agency so as to fall within the terms of the exclusion in the Dixie Auto policy? (2) If Dixie Auto provided coverage, is its coverage of such a nature to fall within the terms of the endorsement on the USF&G policy resulting in no coverage for the McMurreys under the USF&G policy?

## CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and the subject matter by reason of the provisions of § 1332 of Title 28 U.S.Code.

This is a diversity case and the law of Alabama is controlling. The Court has not been cited to and knows of no Alabama case which has construed the exclusion in the Dixie Auto policy.

The parties have cited two cases construing an exclusion employing the same language as that in the Dixie Auto policy. The cases reach contrary results.

In Caster v. Motors Ins. Corp. (MIC), 28 Ill.App.2d 363, 171 N.E.2d 425 (1961) Dempsey was given permission by an

automobile dealer to drive one of their cars over the weekend to determine if he wished to buy it. Dempsey decided not to purchase the car and let a friend, Woodside, drive the car to see if he wished to purchase it. Woodside had an accident while driving the dealer's car. Woodside had a collision policy on his own car which contained the provision excluding coverage when the accident arose out of the operation of an automobile sales agency. It was held that Woodside's insurer had coverage as the court was of the opinion that the accident did not arise out of the operation of an automobile sales agency.

In the case of Bendykowski v. Hall Chevrolet Co., 10 Wis.2d 579, 103 N.W.2d 516 (1960), Mancheski and his wife went to Hall Chevrolet Co. to look at a car with an automatic gear shift. The salesman for Hall Chevrolet Co. took them for a demonstration ride in one of the new cars equipped with an automatic gear shift. After the salesman drove for a time, he permitted Mrs. Mancheski to drive. The salesman sat next to her and instructed in the use of the automatic gear shift. While Mrs. Mancheski was driving she was involved in an accident. The insurer of the vehicle owned by Mancheski denied coverage asserting that the accident arose out of the operation of an automobile sales agency. The Supreme Court of Wisconsin, reversing the trial court, agreed that the exclusion was applicable.

These cases have important factual differences. In the Caster case the permission and use of the car were unlimited and the accident occurred while the customer was alone in the car. In the Bendykowski case the permission and use of the car was for the specific purpose for the dealer to demonstrate the new automatic gear shift. The opinion pointed out that the Mancheskis were not prospective purchasers of that car, nor was the salesman attempting at the time of the accident to sell that car to them. Furthermore, at the time of the accident the salesman was in the car and instructing in the use of the car.

■ This Court will follow Caster rather than Bendykowski since the facts here respecting the use of the dealer's car more nearly fall within Caster than Bendykowski. This Court holds that the accident on April 9, 1966 involving the car owned by Hall Motors and driven by Vernie B. McMurrey did not arise out of the operation of an automobile sales agency or any of the other terms as used in the exclusion in the Dixie Auto policy. Therefore, Dixie Auto provided coverage to Jerald McMurrey and Vernie B. McMurrey for the suits against them arising out of that accident.

■ The Court has reviewed several cases involving provisions in various policies which exclude coverage when the automobile is "used in the automobile business." "Automobile business" is defined as including the "business or occupation of selling, repairing, servicing, storing or parking automobiles." These provisions are at times applicable to owned automobiles and at other times are applicable to non-owned automobiles. This provision, or a similar one, is apparently more in present use than the exclusion in the Dixie Auto policy. Several cases have construed these clauses.

The Seventh Circuit Court of Appeals cited the Caster case with approval in construing one of these newer clauses as applied to a non-owned automobile. The Court reviewed the various cases and held that the "use" of the automobile there involved did not fall within the exclusion. Helmich v. Northwestern Mut. Ins. Co., 376 F.2d 420 (7th Cir. 1967).

Both the Fifth Circuit Court of Appeals and the Supreme Court of Alabama have construed exclusions using the words "used in the automobile business." Sanders v. Liberty Mutual Ins. Co., 354 F.2d 777 (5th Cir. 1965); St. Paul Fire and Marine Ins. Co. v. Thompson, 280 Ala. 67, 189 So.2d 855 (1966). The cases are similar on the facts but reach contrary results. In Sanders the owned automobile was being driven by a serv-

ice station employee enroute to the station for servicing when he was involved in an accident. In *Thompson* the owned automobile was being returned to the owner after repairs by an employee of the garage when the accident occurred. *Sanders* held the exclusion applicable. *Thompson* held it inapplicable concluding that the car was not then being used in the automobile business. Since *Sanders* was decided prior to *Thompson,* the holding in *Sanders* would be different in a case today controlled by the law of Alabama.

Although the *Sanders* and *Thompson* cases do not construe the exclusion found in the Dixie Auto policy the parties have cited these cases and other cases construing this type exclusion as being of some authority in this case.

The Court notes that several recent cases have held that the customer's use of a dealer-owned car was not a use in the automobile business. Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 146 S.E.2d 410 (1966); Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N.C. 341, 152 S.E.2d 436 (1967); Government Employees Ins. Co. v. Lumbermens Mut. Cas. Co., 269 N.C. 354, 152 S.E.2d 445 (1967).

■ The second question for the Court's determination is the effect of the endorsement in the USF&G policy. This is commonly known as an "escape clause." It is intended to provide coverage to additional insureds only when they have no other coverage available to them.

The USF&G endorsement is specific in nature and by its terms includes "primary or excess" insurance. Under the Dixie Auto policy the McMurreys had at the very least excess insurance available to them in an amount sufficient to comply with the provisions of the Alabama Safety-Responsibility Act. Title 36, Section 74 (46), Code of Alabama, 1958 Recompiled (Supp.).

Alabama has not construed an "escape clause." The Fifth Circuit Court of Appeals has approved such provisions, Continental Cas. Co. v. Suttenfield, 236 F.2d 433 (5th Cir. 1956); Penn v. National Union Indemnity Co., 68 F.2d 567 (5th Cir. 1934). Several state courts have given effect to these clauses. Continental Cas. Co. v. Weekes, 74 So.2d 367, 46 A.L.R.2d 1159 (Fla.1954); Government Employees Ins. Co. v. Globe Indemnity Co., 415 S.W.2d 581 (Ky. 1967); Allstate Ins. Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.E.2d 436 (1967); Government Employees Ins. Co. v. Lumbermens Mut. Cas. Co., 269 N.C. 354, 152 S.E.2d 445 (1967). The last two cases involve a clause with the same language as that in the USF&G policy.

Louisiana has reached a contrary result. Lincombe v. State Farm Mut. Auto. Ins. Co., La.App., 166 So.2d 920 (1964) and State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co., La.App., 184 So.2d 750 (1966) cert. den. 249 La. 454, 455, 187 So.2d 439 (1966). The escape and excess clauses were held repugnant and were disregarded. The court then prorated the judgments between the insurers.

This court declines to follow the Louisiana decisions and holds that there is no coverage under the USF&G policy for Mr. and Mrs. McMurrey for the accident on April 9, 1966 and the suits against the McMurreys resulting therefrom. Dixie Auto has the sole coverage available to Mr. and Mrs. McMurrey.

■ This Court is also of the opinion and holds that there was no agency involved between Mr. and Mrs. McMurrey and Hall Motors at the time of the accident on April 9, 1966. Hall Motors was not guilty of any negligence or wantonness causing or contributing to the accident. Hence, the duty to respond in damages to the claimants falls solely on Mr. and Mrs. McMurrey and thus on Dixie Auto. USF&G should not have to participate in the amounts paid in settlement of the suits of the claimants even though USF&G did provide coverage to Hall Motors.

**560**

The relief prayed for by USF&G in its complaint is due to be granted.

1. Defendant Dixie Auto is liable to plaintiff for the amount paid by USF&G to W. H. Brown, Mrs. W. H. Brown, Earl Rolland and Janice F. Rolland in settlement of their suits against the McMurreys and Hall Motors, the court costs in the four suits, together with interest at 6% on the settlement sums from February 2, 1968 through the date of final judgment hereon, necessary expenses and reasonable attorney's fees for the services of plaintiff's attorneys in the settlement of the four cases.

2. There is no stipulation or proof as to expenses or attorney's fees incurred by plaintiff and no judgment as to amounts can be rendered at this time.

A judgment in accordance with these findings and conclusions may be prepared and presented.