**Alan D. ZELINSKY, Administrator of the Estate of Karl Heinz Marschall, Deceased, Plaintiff-Appellee,**

**v.**

**ASSOCIATED AVIATION UNDERWRITERS and Glens Falls Insurance Company, Defendants-Appellants.**

**No. 72–1493.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1973.

Decided May 24, 1973.

Irving G. Swenson, John W. McCullough, Chicago, Ill., for defendants-appellants.

Solomon Gutstein, Ronald S. Cope, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS and BARNES *, Senior Circuit Judges, and SPRECHER, Circuit Judge.

HASTINGS, Senior Circuit Judge.

The administrator of the estate of Karl H. Marschall, deceased, sought recovery of an amount allegedly due under a group travel insurance policy written by the defendant insurance companies providing coverage, *inter alia,* for accidental death. At issue was whether decendent was an insured employee under the terms of the policy.

Following discovery, the parties filed cross-motions for summary judgment contesting the scope of policy coverage. The material facts were not in dispute. After a full hearing, the district court held that decedent was a party insured within the applicable policy provisions. It granted plaintiff's motion for summary judgment in the amount of $50,000 (the amount due if coverage existed), plus statutory interest from the date of the claim, but without costs and attorney's fees. Defendants appealed. We affirm.

The policy was issued November 1, 1966, to the employer, Miehle-Goss-Dexter, Inc., its divisions and wholly owned subsidiaries, 3100 South Central Avenue, Chicago, Illinois. The employer was a United States corporation engaged in manufacturing printing presses, with both domestic and foreign divisions and wholly owned subsidiaries. One of its domestic divisions was the Goss Company of Chicago. The policy covered accidental death of employees occurring "worldwide" during "travel and sojourn on the business of the Employer" with certain restrictions and exclusions not relevant here. On November 17, 1966, the policy was amended to add as additional "employers" Miehle-Goss-Dexter Americas Companies and M.G.D. Canada Ltd.

Also, Part I of the policy, "Insured Defined," was amended to read as follows:

| CLASS I | PRINCIPAL SUM |
|---|---|
| All United States and Canadian Officers and Directors of the Employer. | $100,000.00 |
| CLASS II | PRINCIPAL SUM |
| All other United States and Canadian Employees of the Employer not included in Class I excluding Truck Drivers and their Helpers. | $ 50,000.00 |

On January 28, 1969, while employed as a press erector by the Goss Company of Chicago on assignment in Santiago, Chile, the decedent was killed in an automobile accident while traveling on company business. A fellow employee of Goss Company, Hernando Secard, a Colombian citizen residing in Downers Grove, Illinois, was killed in the same accident. A claim for Secard's death under the policy at issue was promptly paid because it was conceded that he was a United States employee. Defendants rejected the claim arising out of decedent's death on the ground that he did not so qualify.

Marschall was a German national. While residing in Berlin, he became a technician trained to work with printing presses. He married Ursula there on February 23, 1946. They were the parents of a son, Peter. Decedent left Germany in 1954 and lived and worked in Central America. He was subsequently joined by his wife and son. On December 15, 1957, decedent and Ursula immigrated to the United States. Both registered as aliens. They used a New Jersey mailing address. They lived for various periods of time in South America, where he worked. They returned to the United States every two years, living each time in New York. Marschall continued to work in various locations in South America. Ursula became a permanent resident of the United States about 1965 when the couple separated but were

* The Honorable Stanley N. Barnes, Senior Circuit Judge for the Ninth Circuit, is sitting by designation.

not divorced. Their son Peter became a staff sergeant in the United States Air Force.

Decedent was first hired in Chicago by Miehle-Goss-Dexter, Inc., as a press erector, beginning work in South America July 15, 1963. Later, in 1964, he was employed by Miehle-Goss-Dexter Americas Companies in Sao Paulo, Brazil. In 1966, he was employed by and placed on the payroll of the Goss Company of Chicago, a division of Miehle-Goss-Dexter, Inc., as a press erector and continued to be assigned to work as such in various South American countries. It was while so employed that decedent and Hernando Secard were traveling from La Nacion, Chile, to Santiago, Chile, when they were killed in the automobile accident.

Decedent had maintained substantial ties with the United States and the Goss Company, his United States employer. He was carried on the Goss Company payroll as Clock No. 5731. He was paid for his services in United States dollars, and his paychecks were sent to the First National City Bank of New York and deposited in a personal account he maintained there. He was regularly reimbursed in United States dollars for expenses incurred in his foreign travel on behalf of Goss. All of his work for Goss was performed in South America.

Defendants contend that the trial court erred in holding the relevant policy language defining "insured," set out fully above, to be ambiguous and in turning to extrinsic aids to explain its meaning. They read the words "United States and Canadian Employees of the Employer" to be clear and unambiguous and maintain that "the term employees must be limited to *employees in the United States* and Canada and will cover such employees while traveling overseas." (Emphasis added.) It is clear to us that such language used by defendants does not appear in the policy.

On the other hand, plaintiff contends that the term "United States Employees" means employees of the United States corporation Miehle-Goss-Dexter, Inc., and its wholly owned domestic subsidiaries and divisions, "as contrasted with the employees of the corporation's foreign subsidiaries and divisions." Assuming *arguendo* that this meaning may be established by the record, it is clear that such language does not appear in the policy itself.

■ We agree with the trial court that the phrase "United States Employees" on its face is ambiguous and does not have one clear and unambiguous meaning and that neither interpretation advanced by the parties is compelled. Under such circumstances it is well settled, not only in Illinois but in other jurisdictions, that where a contract in issue is *not* unambiguous on its face, it is necessary for the district court to consider all the circumstances that gave rise to its existence before attempting to interpret it. Buschmann v. Professional Men's Association, 7 Cir., 405 F.2d 659, 663 (1969). It has been held that where any doubt does arise as to the sense or meaning of a contract, resort may properly be had to the circumstances surrounding its execution. Green v. Aerosol Research Co., 7 Cir., 374 F.2d 791, 794 (1967); *see* Buchanan v. Swift, 7 Cir., 130 F.2d 483, 485 (1942).

■ It is also well established that the provisions of the insurance policy are to be construed strictly against the insurer, as their drafter, and ambiguities are to be resolved in favor of the insured. Helmich v. Northwestern Mutual Insurance Co., 7 Cir., 376 F.2d 420, 423 (1967).

■■ We hold, therefore, that the district court quite properly resorted to the consideration of extrinsic evidence to resolve the question of contract interpretation and, in so doing, correctly determined that such evidence favored plaintiff's interpretation.

It was shown that the original policy, issued through defendant Associated Aviation Underwriters, was first drafted in 1960 and afforded coverage for all employees of the employer and its wholly owned subsidiaries. At that time the chairman of the board of Miehle-Goss-Dexter, Inc., sent a letter to all em-

ployees, *specifically including erectors*, who traveled on business for it and its divisions or domestic subsidiaries, advising them of this new group travel accident insurance coverage for all employees "while you are traveling—except commuting—on company business anywhere in the world." This policy expired in 1963. The new policy similarly defining "insured" was issued by Royal Globe Insurance Company. In 1964, a broker for the employer wrote to Royal Globe that it was not the intent of the employer or its brokers to cover any of the employer's foreign subsidiaries but to cover only the employees of the United States corporation and its wholly owned domestic subsidiaries. Accordingly, Royal Globe was directed to draw an amendment covering only "those who are employed by domestic corporations" and to cover them while "traveling on company business anywhere in the world." The policy was amended to cover, *inter alia*, "employees of United States companies only."

In October 1966, a representative of one of the present defendants was negotiating with the employer's broker in connection with the subject policy. He wrote to George A. Melone, a representative of the employer's insurance broker, setting forth the terms and conditions of the present policy, which contained the same definition referred to in the original 1960 policy, and which covered "All other Employees of the Employer not included in Class No. I, excluding Truck Drivers and their Helpers." As a part of its proof dealing with the intention of the parties, the plaintiff, in support of his motion for summary judgment, filed an affidavit of Melone specifically stating that in drafting the policy language defining "insured" the parties never had any intention of changing the definition of "insured" as contained in the Royal policy. The district court did not err in crediting the Melone affidavit.

We agree with the trial court that the scope of coverage "depended on the nationality of the employer-company, not the location of the employee." Our hold-ing that defendants are liable under the policy is further influenced by the fact that the defendant companies promptly paid the claim arising from the death of decedent's fellow employee, Hernando Secard. Secard was a citizen of Colombia doing the same work as decedent in Chile. The only difference was that Secard resided in Downers Grove, Illinois. Both had the same Chicago-based employer. We fail to see that the employee's place of residence has any relevance under the construction of the policy found proper in this case.

We have considered other contentions raised by defendants but do not find them persuasive.

The judgment of the district court is affirmed.

Affirmed.