BEATTY, Justice.
Appeal by the plaintiff, Troy E. Ford, from a judgment for the defendant, Charles R. Scott, in plaintiff’s action for breach of contract. The evidence was presented ore tenus. We affirm.
Scott was the owner of all of the stock of the B & S Trenching and Excavating Company, Inc. (B & S). B & S submitted a successful bid on a waterline contract with a third party, but later B & S was unable to obtain bonding on the project. Scott, therefore, sold 76 percent of the B & S stock to John Thornton, and, in return, Thornton made a $150,000 cash bond and agreed to finance the project to completion.
Thereafter, Thornton brought Ford into B & S as president. Scott was still working for the company and still owned 24 percent of the company’s stock. Ford purchased Scott’s 24 percent of the stock and certain promissory notes made by B & S which were payable to Scott. Ford paid Scott $25,000. Scott also executed a promissory note, prepared in Ford’s office, payable to Ford in the amount of $10,000.
Scott continued to work for B & S for wages after this sale, but left the company after about three weeks. Ford left the company before the job was completed. He sold his stock to Thornton, after offering it to Scott, at the time the project was finished.
Thereafter, Ford sued Scott on the $10,-000 promissory note, which we reproduce below:
“$10,000.00 DATE: January 22, 1980
“The undersigned, for value received, promises to pay to the order of Troy E. Ford, Rt. 2, Box 34D, Quinton, AL, the sum of Ten Thousand and no/100 ($10,-000.00), together with interest on the unpaid portion thereof from date at the rate of 1½ percent per month, on demand, until said sum is paid in full, payable at $ (see terms below), or at such place or places as the owner or holder hereof may from time to time designate. All payments shall be applied first to interest on the unpaid balance of principal, and the balance to principal.
“Each maker and endorser hereby waives all right of exemption under the Constitution and Laws of Alabama, and agrees to pay the cost of collection, in- *364 eluding a reasonable attorney’s fee, if this obligation is not paid at maturity.
“Demand, protest, and notice of protest, and all requirements necessary to hold them liable, are hereby waived by each and every maker and endorser of this note.
“This note is given, executed and delivered under the seal of the undersigned.
“/s/Charles R. Scott
“Witness /s/Dorothy L. Hill
“Terms: Full amount payable for release of assignment on stock from Charles R. Scott to Troy E. Ford (90 shares of B. & S. Trenching & Excavating, Inc.) due ten days after final payment on contract between said B. & S., etc., and Bryan Burn-well Water Authority.”
In his answer to the complaint, Scott alleged the following:
“2. Defendant, Charles R. Scott, says prior to the execution of the promissory note made the basis of this suit, that the said Charles R. Scott, was the sole owner of B and S Trenching and Excavating, Inc. That B and S Trenching and Excavating, Inc., bid on a Bryan-Burnwell Water Authority job in the amount of Four Hundred Thirty-Three Thousand and no/100 Dollars ($433,000.00), and that the said Charles R. Scott, was not financially strong enough to bond the job and transferred seventy-six percent (76%) of the stock of B and S Trenching and Excavating, Inc., to John Thornton, who put up a cash bond in the amount of One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) guaranteeing the performance of the job. The Defendant further says that Troy Ford, the plaintiff, was brought into the job picture and that the defendant did sell to him for Twenty-Five Thousand and no/100 Dollars ($25,-000.00), the remaining stock in B and S Trenching and Excavating, Inc. It was understood that Troy Ford would run the project and he and John Thornton would share in the profit and that Charles R. Scott was to be paid Four Hundred and no/100 Dollars ($400.00) per week for his labor. At the time the promissory note was signed, Ford agreed that when the job was finished that Charles R. Scott had an option to purchase back the stock for Ten Thousand and no/100 Dollars ($10,000.00) provided he did it within ten days of the completion of the job. When the Bryan-Burnwell Water Authority job was completed, there was nothing else for B and S Trenching and Excavating, Inc., to do and they had no other job going, so Charles R. Scott, did not exercise his option to purchase the stock and he denies that he is in any way indebted to Troy Ford.”
Following a hearing, the trial court rendered a judgment for the defendant. Plaintiff’s motion for a new trial was denied and this appeal ensued.
The plaintiff’s principal contention on appeal is that the typewritten language at the bottom of the note does not render the note ambiguous, but that it is harmonious therewith. According to the plaintiff’s testimony, the “Full amount payable” includes $10,000, plus the interest described due 10 days after final payment on the waterline job, AND an option to Scott to repurchase the 90 shares (24%) he had sold to Ford at a price set by Ford himself but not expressed in the note.
Scott, on the other hand, testified that Ford agreed to give Scott an option to repurchase a 9 percent interest in B & S at the conclusion of the waterline project. The terms of this option, according to Scott, were that he would have the option either to buy the 90 shares back or keep the $10,000, at his option.
The terms of the note’s “payable” provision, and Ford’s own actions, tend to support Scott’s position on the effect of the note’s language. The record establishes that Ford asked Scott if he wanted the stock before Ford later sold it to Thornton, thus supporting the conclusion that Scott could buy or not buy the stock for $10,000. Additionally, the language of the provision, “Full amount payable for release of assignment on stock” can be interpreted as meaning that Scott was to pay the $10,000 to have his former “assignment” released (re *365 turned) to him. Indeed, each party had his own interpretation of the meaning of the note’s terms, and, those terms being ambiguous, it was the trial court’s responsibility to resolve their meaning. Johnson-Rast & Hays, Inc. v. Cole, 294 Ala. 32, 310 So.2d 885 (1975). The trial judge has resolved the facts in the defendant’s favor, and, under the evidence, this Court cannot conclude that his findings are palpably wrong. Harrelson v. Glisson, 424 So.2d 591 (Ala.1982).
Ford also contends that the trial court committed reversible error when, over a general objection, the court allowed Scott’s lawyer to ask Ford questions on cross-examination concerning Thornton’s out-of-court assertions that Ford had embezzled B & S funds. This line of questioning followed inquiry into the identity of the company’s management.
Of course, this case was tried without a jury, and in such a case an erroneous admission of evidence, if this was erroneous, does not render a judgment reversible when the trial court’s conclusions are supported by substantial evidence. Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala.1981). Here, there was substantial evidence to establish that Scott sold his 24 percent interest in B & S to Ford for $25,000, and that he received an option to repurchase 9 percent for $10,000, following the completion of the waterline project.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.