850 F.2d 1398
 Thomas CLYCE, Barbara A. Clyce, Alabama Federal Savings &
Loan Association, and First Alabama Bank of
Birmingham, Plaintiffs-Appellees.
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellant.
 No. 87-7561.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 4, 1987.
 
 Thomas A. Woodall, Rives & Peterson, Birmingham, Ala., for defendant-appellant.
 Donald H. Brockway, Jr., Corretti & Newsom, Birmingham, Ala., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS*, Senior Circuit Judge.
 NICHOLS, Senior Circuit Judge:
 
 
 1
 St. Paul Fire & Marine Insurance Company (St. Paul) appeals the decisions of the district court denying St. Paul's motion for directed verdict and granting the Clyces' motion for a new trial solely on the issue of damages. Civil Action No. 86-G-0530-S (N.D.Ala.). We affirm the decision of the trial judge denying St. Paul's motion for directed verdict and the jury instructions given on the interpretation of the insurance policy. We reverse the trial judge's decision granting the Clyces a new trial on the issue of damages.
 
 Background
 
 2
 Appellees in this suit, Thomas and Barbara Clyce, took out an insurance policy with St. Paul, No. 9BB300276, known as an all-in-1 policy. An all-in-1 policy comprehensively covered the Clyces for damage sustained to their real and personal property as listed in the insurance agreement. The policy specifically stated that the Clyces' home in Birmingham, Alabama was covered for damage sustained except as noted in item 6 on page 2 of the policy, which provides:
 
 
 3
 We won't cover any loss that's caused or made worse by any of the following: Earthquake. Landslide, mud flow or other earth movement. Flood, surface water or spray, even if driven by wind. Underground water exerting pressure on, seeping or flowing through a sidewalk, driveway, foundation, basement, wall, floor, door, window or other opening.
 
 
 4
 Later in the policy, in defining instances where coverage was appropriate, the policy states: "We cover damage caused by dampness or extreme temperatures only if it's a direct result of rain, snow, sleet, ice or hail." At the time of the damage to the Clyces' property, the all-in-1 policy was in effect.
 
 
 5
 The Clyce property sits below street level and is surrounded by two retaining walls. One, a long retaining wall, stands in front of the Clyce property between the Clyce home and the street. The second, a smaller wall, adjoins the house. The property, in general, slopes downward from the street. On or about the 4th of January 1984, the long retaining wall in front of the Clyce home collapsed. At that time, Clyce also noticed bows and cracks in the smaller wall and cracks in the front foundation wall of his basement.
 
 
 6
 After the collapse, Clyce approached St. Paul to file a claim for costs to repair the collapsed wall and damage to the smaller wall and basement. On February 13, 1984, Clyce sent a letter to St. Paul stating that freezing temperatures and the formation of ice, in his opinion, caused the wall collapse and other problems. St. Paul, relying on the opinion of a civil engineer it had retained to analyze the Clyce claims, denied coverage for the damage. The report of the civil engineer stated that "earth pressure, though, from the weight of the soil, would have created pressures that could not be withstood by an eight inch unreinforced concrete block retaining wall." The claims adjustor for St. Paul relied on the above-quoted language on "earth movement" to deny the Clyces' claims. After denial, the Clyces sued over the proper amount of money recoverable for the collapse and the extent of coverage the policy afforded them.
 
 
 7
 The case resulted in two trials. At the first trial, the jury held St. Paul responsible for the costs to repair the collapsed walls and, following instructions from the trial judge, found that St. Paul improperly denied coverage based on its "earth movement" exclusion clause. The judge had instructed the jury:
 
 
 8
 The insurance policy does not exclude from coverage damage caused or made worse by earth pressure. That is not an exclusion in this policy. That language does not appear. There is language, and you can read it--I think it's on page 6. It's an exclusion provision which says that the policy doesn't cover damage resulting--I'm not quoting now, but I'm just paraphrasing--does not cover damage from--and now I do quote, "earthquake, landslide, mud flow or other earth movement."
 
 
 9
 The language of insurance policies, especially a plain language policy, which this is, such language is interpreted according to the ordinary, every day usage of the words, not as specialized engineering or scientific interpretation or definition. And the every day use of pressure does not mean movement. So, earth pressure is not earth movement, and earth pressure is not an exclusion under this policy.
 
 
 10
 After the presentation of the Clyces' case, St. Paul moved for a directed verdict which the trial judge denied. On April 29, 1987, after a two-day trial, the Clerk of the Court entered the jury's verdict in the record. The jury found in favor of the Clyces and assessed a damage award of $9,500 against St. Paul. On May 29, 1987, the Clyces filed a motion for a new trial on the issue of damages, asserting that the jury's award was contrary to law and unsupported by the evidence presented. The court granted the Clyces' motion on June 2, 1987. At the second trial on damages, utilizing some of the expert testimony on costs to repair from the first trial, the jury awarded the Clyces $25,092.25. St. Paul timely filed an appeal to this court contesting the propriety of the denial of its directed verdict motion at the first trial and the grant of Clyces' motion for a new trial on the issue of damages.Discussion
 
 
 11
 The case before us is a diversity action predicated on contract law claims. Alabama law therefore controls the disposition of substantive issues and this court's jurisdiction is premised on 28 U.S.C. Sec. 1291.
 
 
 12
 A. In assessing the propriety of the denial or grant of a motion for directed verdict, this court reviews the trial court's decision under an abuse of discretion standard. Bunch v. Walter, 673 F.2d 127, 130 n. 4 (5th Cir.1982); Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc). The trial court must determine
 
 
 13
 whether there is sufficient evidence to submit a case to the jury in the face of a directed verdict motion if, after viewing all the evidence in the light most favorable to the nonmoving party, the facts and inferences point so strongly in favor of one party that reasonable persons could not decide against the movant.
 
 
 14
 Cook v. Branick Mfg., Inc., 736 F.2d 1442, 1445 (11th Cir.1984).
 
 
 15
 The record in this case is clear. The trial court assessed the evidence at hand in the light most favorable to the nonmoving party, the Clyces, and decided that sufficient evidence existed to send the case to the jury. We hold that the trial judge did not abuse his discretion in so finding.
 
 
 16
 The record is replete with contradictions between the experts, with differences in testimony as to the value of the Clyces' property. In the face of such divergence, this court would be hard pressed to find an abuse of discretion. Therefore, we affirm the trial court's denial of St. Paul's motion for directed verdict.
 
 
 17
 B. St. Paul also challenges the jury instructions given by the trial judge at the first trial referencing the "earth movement" provision of the Clyces' insurance policy. The interpretation of a contract, which an insurance policy undoubtedly is, is a question of law within the scope of the trial court's determination. Gibbs v. Air Canada, 810 F.2d 1529, 1532 (11th Cir.1987); Brewer v. Muscle Shoals Bd. of Education, 790 F.2d 1515, 1519 (11th Cir.1986); see also Ford v. Scott, 462 So.2d 362, 365 (Ala.1985); Johnson-Rast & Hays, Inc. v. Cole, 310 So.2d 885, 889 (Ala.1975). As the trial court reasoned, provisions in insurance policies are construed against the drafter of the policy when ambiguities exist. Aschenbrenner v. U.S. Fidelity & Guaranty Co., 292 U.S. 80, 84-85, 54 S.Ct. 590, 594, 78 L.Ed. 1137, 1143 (1934). See also Zelinsky v. Associated Aviation Underwriters, 478 F.2d 832 (7th Cir.1973). In so construing the policy, the trial court examined the policy itself, reviewed the testimony of the experts, and determined that with a common sense definition of the terms, "earth movement" and "earth pressures" differed so that "earth pressures" would be covered under the all-in-1 policy.
 
 
 18
 The trial court is afforded a wide latitude in interpreting evidence before it, drawing legal conclusions, and instructing the jury accordingly. Salem v. U.S. Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317 (1962); Vallot v. Central Gulf Lines, Inc., 641 F.2d 347, 350 (5th Cir.1981). In this instance, given its interpretation of the evidence presented, the trial court did not err in instructing the jury as it did, that "earth movement" and "earth pressures" were significantly different for purposes of coverage. The earth behind the retaining wall could have been found to have dislodged the wall by expanding slightly in cold, freezing weather, but it remained in place after the wall fell and did not follow it in any avalanche, landslide, or mud flow. The trial judge's construction of the policy not only was not outlandish, nor extreme, but agrees with our notion of what the authors of the language intended. As such, we find that the trial court committed no error in instructing the jury as it did. We affirm.
 
 
 19
 C. Lastly, St. Paul challenges the court's decision to grant a new trial on the issue of damages. This court reviews the grant or denial of such motions under an abuse of discretion standard. Fondren v. Allstate Insurance Co., 790 F.2d 1533, 1534 (11th Cir.1986); Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir.1984). In some instances, this court's review must be especially stringent so as to protect the litigant's rights to a jury trial. Id. at 1556. See also Williams v. City of Valdosta, 689 F.2d 964, 974 (11th Cir.1982) (advocating rarely disturbing a jury verdict especially in cases where "the trial involves simple issues [and] highly disputed facts" with an "absence of 'pernicious occurrences' ").
 
 
 20
 After thorough consideration of the trial judge's actions in light of this court's responsibility to protect a litigant's rights to a jury trial, we hold that it was improper for the trial court to grant the new trial on the issue of damages. The testimony adduced at the first trial indicated that evidence did exist supporting the jury award granted--i.e., $9,500--and that award should not have been disturbed. The evidence of Mr. Fillipelli, the insurance adjustor, of the civil engineer, and the contractors presented by the Clyces, set up a broad range of possible recovery from which the jury could pick and choose. The evidence suggested possible recovery from a little over $1,000 to as much as over $20,000. As such, the trial court inappropriately and improvidently granted the new trial motion in light of existing evidence. Substantiality of evidence need not necessarily be measured by a nose count of contending experts.
 
 
 21
 This circuit holds that "certain circumstances [require] a trial court [to] grant even greater deference to a jury verdict." Fondren, 790 F.2d at 1534 n. 3, greater, that is, than the substantial evidence rule would require in a nonjury case. This rule is applicable in the instant case. We therefore reverse and remand the trial court's decision to grant a new trial on the issue of damages. The trial court is instructed to reinstate the original jury verdict for the Clyces in the amount of $9,500 with appropriate pre-judgment interest.
 
 
 22
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation