**Joseph HEWITT, Plaintiff-Appellant,**

**v.**

**The B.F. GOODRICH CO., a foreign corporation and T.G. & Y. Stores, Co., a foreign corporation, Defendants-Appellees.**

**No. 83–3174.**

United States Court of Appeals,
Eleventh Circuit.

May 29, 1984.

Rehearing and Rehearing En Banc
Denied July 9, 1984.

Larry Klein, West Palm Beach, Fla., for plaintiff-appellee.

Chris W. Altenbernd, Tampa, Fla., for defendants-appellees.

Before FAY, VANCE and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

■ The appellant, Joseph Hewitt, was injured when a tire he was mounting exploded. He sued the manufacturer, B.F. Goodrich Company, the retailer, T.G. & Y. Stores Company and American Motorists Insurance Company in a Florida court.[1] The case was removed to the United States District Court for the Middle District of Florida based on diversity of citizenship. A jury trial was held before a visiting Senior District Judge, sitting by assignment. The case was tried on theories of negligence, warranty and strict liability. In July, 1982 the case was submitted to the jury solely on the strict liability theory. The jury found for the appellant and awarded damages of $450,000. B.F. Goodrich moved for a directed verdict, judgment N.O.V., a remittitur, or a new trial. The trial judge found that the verdict was against the clear weight of the evidence and ordered a new trial. At retrial in January 1983, a jury found against the appellant.[2] We find that the district court abused its discretion in ordering a new trial, therefore, we reverse the order granting a new trial and reinstate the first jury's verdict.

On April 8, 1978, the appellant was working at his uncle's Standard Station in Inverness, Florida. Mr. Louis Mennella bought two new F–78 Brunswick tires at a local T.G. & Y. store and brought them to Hewitt's Standard Station to be mounted. The task fell to the appellant. While inflating one of the new tires, it exploded injuring the appellant's right arm and damaging his eyesight. The Brunswick tire is a private label tire manufactured by B.F. Goodrich for sale by T.G. & Y. At trial, the appellant attempted to show the explosion was caused by a manufacturing defect. The appellees tried to prove the accident was caused by improper mounting of the tire and that appellant's negligence caused or contributed to his injuries.

The only issue in this appeal is whether the trial judge erred by setting aside the jury verdict and granting a new trial. The district court found that "[i]n this case, there is little credible evidence that the tire in question was defective and substantial evidence that if there was a defect plaintiff's own actions played a predominate role in causing his injuries." The trial judge considered appellant's expert witness' testimony "suspect" and "tenuous" when compared to the testimony of defense experts. He found that "[t]he jury's conclusion that there was a manufacturing defect in the tire is not supported by any credible evidence and flies in the face of the great weight of the evidence to the

---

1. Appellant also sued Atlas Supply Corporation and Coates Tire Distributor, Inc. for an alleged defect in the tire-changing machine. The Second Amended Complaint dropped Coates from the lawsuit and added the J.P. Hennessy Company, Inc. Both of these defendants were dismissed on summary judgment just prior to the first trial. Appellant does not challenge that ruling.

2. Appellant does not challenge any part of the second trial or verdict. This appeal is only of the order granting a new trial and is properly taken after the verdict in the new trial. *Evers v. Equifax, Inc.,* 650 F.2d 793, 796 (5th Cir. Unit B 1981); *Massey v. Gulf Oil Corp.,* 508 F.2d 92 (5th Cir.), *cert. denied,* 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975).

contrary." On the issue of comparative negligence, the district judge found "that great weight of the evidence indicates ... that the plaintiff's own negligence, if not the sole cause, was a contributing proximate cause of his injury."

■ When ruling on a motion for a new trial, a trial judge must determine "if in his opinion, 'the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *United States v. Bucon Construction Co.,* 430 F.2d 420, 423 (5th Cir.1970),[3] *quoting, Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350, 352–53 (4th Cir.1941). "[T]o assure that the judge does not simply substitute his judgment for that of the jury, ... we have noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great— not merely the greater—weight of the evidence." *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 363 (5th Cir.1980), *citing, Spurlin v. General Motors Corp.,* 528 F.2d 612, 620 (5th Cir.1976).

■ A district court ruling on a motion for a new trial is generally reviewed under an abuse of discretion standard. When the trial court grants a new trial our review is broader and requires a stringent application of the same standard. *Williams v. City of Valdosta,* 689 F.2d 964, 974 & n. 8 (11th Cir.1982); *Evers v. Equifax, Inc.,* 650 F.2d 793, 796–97 (5th Cir. Unit B 1981); *Conway,* 610 F.2d at 363–63. This is because when the jury verdict is set aside usual deference to the trial judge conflicts with deference to the jury on questions of

fact. When a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent to protect the litigant's right to a jury trial. *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir.1982); *Massey v. Gulf Oil Corp.,* 508 F.2d 92, 95 (5th Cir.), *cert. denied,* 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975). Three factors, the simplicity of the issues, the extent to which the evidence is in dispute, and the absence of any pernicious or undesirable occurrence at trial, tend to indicate that this court should defer to the jury as factfinder. *Conway,* 610 F.2d at 363; *Love v. Sessions,* 568 F.2d 357, 361 (5th Cir.1978); *Spurlin,* 528 F.2d at 620. When these three factors are not present it is more appropriate to affirm the trial court's decision, recognizing his first-hand knowledge of the course of the trial.

To decide this appeal, we closely read the transcript of the first trial to determine if the jury's verdict was against the great weight of the evidence. It is undisputed that the bead bundle in the tire had been broken prior to the explosion. The bead bundle consists of 18–20 steel bands in a tire that form its strength. The issue before the jury was whether the broken bead bundle was attributable to a manufacturing defect or was due to appellant's own conduct while mounting the tire.

Appellant testified that he first placed the tire and rim on a tire-changing machine[4] and secured the safety cone.[5] He then lubricated the tire and rim with a tire lubricant that aids in the mounting process. His initial attempt to seat the tire[6] was unsuccessful so the appellant applied a high pressure ring[7] to force air into the

---

3. Fifth Circuit decisions before October 1, 1981 are accepted as precedent for the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

4. A tire-changing machine forces the tire onto the rim with the aid of a steel bar.

5. The safety cone is a metal bar that comes up through the center of the rim and secures the rim to the tire-changing machine.

6. A tire is seated when it is flush against both edges of the rim.

7. A high pressure ring forces a burst of air into the tire to get the tire to seat.

tire which would cause the bead to seat.[8] Afterwards, appellant removed the tire from the tire-changing machine to see if the tire was flush against the rim as it would appear if properly seated. His visual examination showed this to be and appellant then replaced the tire in the tire-changing machine. He did not replace the safety cone. He began to fully inflate the tire to reach 32 p.s.i. when the tire exploded. It flew into the air and struck the appellant causing his injuries.

Appellant testified that when the tire exploded it had between 25–30 p.s.i. of air in it. The air pressure hose used at the gas station did not have a pressure gauge attached. Without a gauge attached to the air hose, the operator must pause periodically in the inflation process to use a hand-held pressure gauge to get a pressure reading. The appellant testified that he did this and that the tire had not been overinflated. Appellant was testifying from knowledge gleaned from both the actual circumstances and prior experience. It was undisputed that the air hose in use had a maximum capacity of 150 pounds of pressure.

Appellant's testimony was supported by Chelsey Butcher, a co-worker at the gas station, who testified that after the accident he attempted to mount the tire on the rim. He said that the tire had lubricant on it when he attempted to mount it. Stanley Lew, the B.F. Goodrich company representative, testified that if a tire has no defect it usually takes about 300 p.s.i. to cause a tire to explode due to overinflation, which is double the capacity of this air hose. He suggested that there are many other pitfalls in the mounting process that could cause a tire to explode. Mr. Lew also testified that if the appellant thought the tire was seated it was not unreasonable to have begun to inflate the tire without replacing the safety cone. In fact, it is not clear that the prescribed procedure for mounting requires that the tire be placed back into the tire-changing machine for full inflation.

The appellant's expert witness, Mr. William Bice,[9] testified that "[t]he bead was weakened or completely broken in the manufacturing process" which caused the explosion. He opined that the defect occurred in the vulcanization portion of the manufacturing process and also suggested a weakness in the splice in the bead. He further stated that he had conducted tests and could not get the bead to "hang up" during mounting as was suggested by the defense position. Mr. Bice's testimony was impeached by showing he did not examine the tire until a few years after the accident and that his laboratory did not have the most advanced testing equipment. He was impeached with earlier inconsistent deposition testimony to the effect that the rim may have been undersized. He retracted this opinion at trial. Finally, B.F. Goodrich inquired into Mr. Bice's vulcanization theory and got him to explain that it is the rubber in contact with the bead that he felt could have caused the defect. B.F. Goodrich offered expert testimony that the bead bundle has a tensile strength of approximately 6,000 pounds which is unlikely to break under pressure from the rubber.

---

8. The bead, or bead bundle, when seated, fits tightly against the rim and creates the airtight seal that allows the tire to withstand air pressure inside. Expert testimony for both parties agreed that appellant's action in using the high pressure ring was reasonable and indeed the generally accepted way to get a tire to seat when one is having difficulty.

9. Mr. Bice was accepted as a qualified expert. He has a B.S. in physics from the University of Akron. During college he worked in a rubber laboratory at school, for Goodyear Tire Company and in B.F. Goodrich's tire laboratory. After graduation he was employed full-time by B.F. Goodrich and worked in part testing tires in their tire laboratory. He set up a tire manufacturing plant for Goodyear in Peru. In 1963, he left Goodrich after ten years with the company. He worked for a consulting firm for one year and then became manager of tire engineering and design for the Mansfield Tire Company. About ten years ago he became director of engineering technology at a technical school. After serving as director for seven years, he left that position to start his own consulting business at which he is presently employed.

B.F. Goodrich had a series of expert witnesses, most employees of the company in various capacities. William Gamgort, manager of quality assurance at the Oaks, Pennsylvania plant, James Rees, manager of that plant, Chester Kukula, former plant manager, and Thomas Stump, technical supervisor at the plant, all testified that they had never seen a bead bundle damaged during the vulcanization process. B.F. Goodrich called Gary Gibson as a reconstruction expert. Mr. Gibson is part of the company's tire failure analysis team that assesses and contests legal liabilities. In his opinion, the tire was not damaged during the manufacturing process but rather was damaged during mounting. In his opinion the tire had in excess of 70 p.s.i. when the explosion occurred. He testified to marks on the tire which may reflect where the tire was improperly positioned during mounting causing the bead bundle to break.

B.F. Goodrich's next reconstruction expert, Mr. Dunlop, works for Smithers Scientific Services, an independent testing and consulting firm. He has tested over four thousand tires, usually on behalf of the tire companies. He testified that the bead broke due to excessive air pressure before the bead had properly seated. He too relied on scuff marks on the tire for this opinion. Mr. Dunlop further testified that the rubber bladder in a tubeless tire such as this one is not strong enough to break a bead bundle during vulcanization as the appellant's expert had suggested.

Other evidence was offered by both parties about the sufficiency of the warnings B.F. Goodrich attached to its tires. The company representative, Mr. Lew, admitted that the equipment at the gas station and skill level of its employees was typical and not outside that contemplated in the manufacture of the tires. The jury saw a film prepared by B.F. Goodrich that showed the manufacturing process in another company plant that was manufacturing a different type of tire. Numerous medical experts testified to the extent of the appellant's injuries and his expected life span. The case was given to the jury on strict liability and contributory negligence instructions.

We have read the transcript of the trial and cannot conclude that the great weight of the evidence supports the defense's position. There is substantial evidence to show that the appellant acted reasonably in changing the tire. The evidence conflicts as to the overinflation issue. There is no way to show conclusively how much air pressure was in fact used. Both sides agree that if the bead were not damaged the tire would only explode with substantially more than Goodrich's expert's opinion of 70 p.s.i. or appellant's testimony of 25–30 p.s.i.. Therefore, the ultimate question remained how was the bead bundle damaged.

This issue is only addressed through expert opinion and here there were conflicting opinions. The trial judge may have considered that Goodrich's experts were more credible than Mr. Bice, however, that is not his role. The new trial was granted on the basis of the trial judge's finding of credibility. Our review of the evidence makes no credibility finding as that is the jury's role. When a jury is assembled to decide issues of fact they also decide credibility questions. The most traditional role performed by a jury is determining the weight to be given to each witness' testimony. The trial judge must see to it that only properly qualified experts present their opinions to the jury and that the rules of evidence are followed. When the resolution of the case boils down to credibility, the trial judge must allow the jury to function. In this case, the usual deference to the factfinder on issues of credibility requires us to defer to the jury and not the judge. No undesirable event occurred at trial. The issue was very simple although the technical testimony may have been complex and the evidence was certainly contested. Thus, it is appropriate to defer to the jury as factfinder. The right to trial

by jury would be substantially impaired if a jury's verdict could be set aside because it is based on evidence that the trial judge weighed differently.

■ The trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow. The trial judge must protect against manifest injustice in the jury's verdict. The record shows that the question of when the bead broke was hotly contested and· not conclusively answered by either side. Mr. Bice's testimony was somewhat contradictory, but defense experts were equally vague in their opinions that the bead breakage occurred during the mounting. The jury's decision is based on evidence properly before it and results in no manifest injustice.

■ It may be that this is the first lawsuit where a plaintiff succeeded in convincing a jury that a bead bundle was broken during the manufacturing process. No expert refuted this as a possibility. Defense witnesses simply said that it was improbable and that they had never heard of it happening. We find that the jury had sufficient evidence in the record to support its conclusion that the bead bundle was broken during the manufacturing process. We further find that the jury could have reasonably considered that the appellant was not contributorily negligent in his mounting methods. Based on these conclusions, we hold that the trial judge abused his discretion. We therefore REVERSE the order granting a new trial and reinstate the jury verdict from the first trial.

The matter is REMANDED for entry of judgment in accordance with the jury verdict rendered in the first trial.