**C.J. ARD, Glen Peacock, Charles Porter, A.E. Scurlock, Plaintiffs–Appellants,**

**A.L. Barton, Plaintiff,**

v.

**SOUTHWEST FOREST INDUSTRIES, Defendant–Appellee.**

No. 87–3283.

United States Court of Appeals, Eleventh Circuit.

July 12, 1988.

Ben R. Patterson, Patterson & Traynham, Tallahassee, Fla., for plaintiffs-appellants.

G. Thomas Harper, Robert S. Phifer, Haynsworth, Baldwin, Miles, Johnson, Greaves & Edwards, P.A., Charlotte, N.C., for defendant-appellee.

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

Before HILL, Circuit Judge, HENDERSON\*, Senior Circuit Judge, and VINING\*\*, District Judge.

## PER CURIAM:

In this appeal the single issue for resolution is whether the United States District Court for the Northern District of Florida abused its discretion by granting the motion of the defendant, Southwest Forest Industries (Southwest), for a new trial in this action brought pursuant to the Age Discrimination in Employment Act, 29 U.S. C. § 621, *et seq.* Because we conclude that the trial judge did not abuse his discretion, we affirm.

C.J. Ard, age 56, Glen Peacock, age 52, Charles E. Porter, age 56, and A.E. Scurlock, age 57, were employed as foremen at Southwest's mill in Panama City, Florida. Southwest manufactures wood and paper products. The mill's manufacturing department consisted primarily of the pulp mill and the paper mill. Before 1984, each facility was divided into two sections. The pulp mill was comprised of a "chemical" side, which encompassed the woodyard and the lime/kilm caustic areas, and the more complicated "pulp" operation, which consisted of the pulp and bleach plants. Similarly, the paper mill was composed originally of the "paper machine side" and the "finishing and shipping side." Ard, Peacock and Porter were pulp mill foremen while Scurlock worked as a finishing and shipping foreman in the paper mill.

In 1982 Southwest began to experience financial difficulties. In response to these hardships, the company eventually implemented a plan of management reorganization. In essence, this plan endorsed a "crew" concept of management, which decreased the number of "working supervisors" and created new supervisory posi-

\*\* Honorable Robert L. Vining, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

tions with increased responsibility. The principal proponents of the crew concept were James Stewart, who became the vice president and general manager of the paper mill in 1984, and Jack Prescott, a member of Stewart's staff.

Prescott assumed the responsibility for determining who would be placed in the new management positions. The plan roughly cut the number of working foremen in half in both the pulp and paper mill areas of the plant. Previously, the pulp mill operated with one shift supervisor over the chemical section and another over the pulp operation. Under the reorganization, one foreman would oversee both the chemical and pulp activities. Similarly, Southwestern consolidated the paper machine foreman's responsibilities with the finishing and shipping supervisor's duties to create a single shift supervisor position.

During the trial, Prescott explained in great detail the recommendation process for the supervisory positions under the reorganization. In addition to relying on his own knowledge of existing supervisors' abilities, which he gathered from almost daily contact with their work, Prescott sought information from their co-workers, reviewed personnel files and solicited assessments about each foreman from their immediate supervisors prior to the reorganization.

In early 1984, after reviewing this information, Prescott submitted his proposals to the superintendents and assistant superintendents who directed the activities of the foremen. This proposal recommended the retention of Carthell Lewis, age 60, Steve Sexton, age 33, C.W. Scott, age 55, Alto Scurlock (the brother of A.E. Scurlock), age 52, and Porter as pulp supervisors under the reorganization. Prescott's recommendation called for the release of Ard, Peacock, L.A. Barnes, age 38, and Curtis Hodge, age 42. Upon further consultation with the pulp mill superintendents, however, Prescott altered his recommendation. According to Albert Strickland and Dick Youngblood, who were superintendents at that time, Hodge had displayed an ability to stay abreast of and handle problems at the mill without the assistance of the superintendents. In their view, this preparedness for potential problems in operation and independence in confronting these difficulties when they materialized made Hodge a superior choice to Porter for the added responsibility of the supervisor's role in the reorganization plan. Given this report, Prescott replaced Porter with Hodge in his recommendation.

As noted above, the supervisory responsibilities on the paper mill side, which previously had been divided between the paper machine foreman and the finishing and shipping foreman, were consolidated in a single position. Because the paper machine operation was more complex and because the finishing and shipping foremen were relatively inexperienced with the paper machine functions, Prescott recommended that Southwest retain the four paper machine foremen: B. Andrews, age 55, M. Andrews, age 60; L. Warren, age 59, and M. Smith, age 50. Art Mashburn, age 51, George Robbins, age 54, A.L. Barton, age 55, and Scurlock, all finishing and shipping foremen, were not slated for retention.

The reorganization plan did create one new finishing and shipping supervisor position. Southwest considered all four of the displaced finishing and shipping foremen for the new job. Mashburn was selected because, according to Prescott, he held the same job before the position was eliminated in 1982 and had performed those same duties on a relief basis since 1982.

Southwest attempted to relocate the pulp and paper mill foremen who had not been assigned supervisory positions in the reorganization. According to Prescott, however, the only available openings for which the displaced foremen arguably were qualified were two "predictive maintenance analyst" positions. From the available foremen, Prescott chose L.A. Barnes and George Robbins to fill these posts. Prescott testified that Barnes and Robbins were more familiar with the type of machinery involved in this job and that they possessed superior mechanical skills. Prescott personally observed Barnes' mechanical work

performance during a strike in 1982. The testimony of Cleveland Edward Roper and Kendall W. Johnson, both maintenance superintendents, also supported Prescott's view of Barnes' and Robbins' competence.

Prescott then presented his proposals to Stewart. Stewart discussed the reorganization plan with his superiors in management, and Prescott's recommendations were approved. On May 14, 1984, Stewart informed Ard, Peacock, Porter and Scurlock that Southwest was terminating their employment.

■ On January 2, 1985, the appellants filed this lawsuit in the district court. The case was tried to a jury between March 17, 1986 and March 26, 1986. The jury returned a verdict in favor of the plaintiffs. On April 7, 1986, Southwest filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The district court denied the first motion but scheduled a hearing for the new trial motion. After the hearing, the district court granted Southwest's motion for a new trial. The action was then tried before a second jury between March 19, 1987 and March 25, 1987. This trial concluded with a verdict for Southwest.[1]

■ The question before us is whether the district court erred by granting, solely on the weight of the evidence, Southwest's motion for a new trial. The law is clear that a district court may grant such a motion if the jury verdict is contrary to the great weight of the evidence. *Watts v. Great Atlantic and Pacific Tea Co., Inc.,* 842 F.2d 307, 310 (11th Cir.1988); *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir.1984). This rule does not, however, grant a license to the trial judge merely to substitute his judgment for that of the jury on questions of fact. Consequently, when considering a motion for new trial, the trial judge may weigh the

evidence, but it is proper to grant the motion only if the verdict is against the great, not just the greater, weight of the evidence. *Watts,* 842 F.2d at 310.

■ Generally, we review the district court's disposition of a motion for a new trial under the abuse of discretion standard. *Watts,* 842 F.2d at 310–11; *Hewitt,* 732 F.2d at 1556. When the district court grants a motion for a new trial based on the weight of the evidence, however, our application of the abuse of discretion standard is "stringent." *Hewitt,* 732 F.2d at 1556.[2] This stricter approach is necessary "because when the jury verdict is set aside [the] usual deference to the trial judge conflicts with deference to the jury on questions of fact." *Id.* When faced with such a conflict, we must examine the simplicity of the issues, the absence of any pernicious occurrences during the trial and whether the evidence is disputed. *Id.* If the issues are simple, the trial free of pernicious events and the evidence uncontested, then deference to the jury as factfinder is more appropriate. *Id.* However, the absence of these factors tends to support the trial judge's decision to grant the motion. *Id.*

■ The sole issue before the jury in this case was whether Southwest's articulated reasons for not retaining the appellants were pretexts for age discrimination. The district court concluded that the great weight of the evidence did not support a finding of pretext. After carefully reviewing the transcript of the first trial and applying the principles discussed earlier, we conclude that the trial judge did not abuse his discretion.

As an initial matter, we note that the record reveals no evidence of any pernicious or undesirable occurrence at the trial. Next, we observe that the jury in effect

---

**1.** The appellants do not take issue with any aspect of the second trial. This appeal challenges only the order granting the new trial and is properly taken after the verdict in the new trial. *Evers v. Equifax, Inc.,* 650 F.2d 793, 796 (5th Cir. Unit B 1981).

**2.** This more rigorous application does not change the standard of review. As this court has observed: "[W]hen the trial judge dismisses a jury verdict solely because in his view the evidence was insufficient, it is *more likely* that he has abused his discretion; fact-finding is the province of the jury...." *Williams v. City of Valdosta,* 689 F.2d 964, 974 n. 8 (11th Cir.1982).

had to consider only whether Southwest's decision to release the appellants stemmed from a discriminatory motive. Accordingly, under the rule in *Hewitt*, the evidence concerning the legitimacy of Southwest's reasons for the failure to retain Ard, Peacock, Porter and Scurlock must be practically undisputed to support the district court's grant of the motion for new trial. Our review of the record reveals that the plaintiffs did not meaningfully dispute Southwest's evidence that the reorganization was an economic necessity and that it kept only the most qualified supervisors in the reorganization.

Southwest offered two reasons for not retaining the appellants. The first explanation—that the reorganization was the result of economic necessity—is uncontradicted. Thus, the trial judge correctly concluded that the jury's verdict was against the great weight of the evidence if it was premised upon a finding that this first reason was a pretext for age discrimination.

The appellants contend that Southwest's second articulated reason—that it retained only the most qualified supervisors in the reorganization—was hotly disputed during the first trial and, therefore, the trial court invaded the factfinding province of the jury by resolving a contested factual question. We disagree. Although the plaintiffs introduced some evidence to show that this proffered reason was pretextual, that evidence is so attenuated and weak that we cannot say the district court abused its discretion in concluding that the first jury verdict was against the great weight of the evidence.

The appellants call attention to evidence that, they maintain, supports the first jury verdict. First, they insist that the jury could have found that Southwest's articulated reason was pretextual based on an organizational chart prepared by Prescott. This chart contained a key which identified the age and education of all plant supervisors. Prescott, however, noted that this chart was prepared before any reorganization plans existed and was not relied upon in any of the reorganization decisions. Furthermore, the chart contains the age and education of individuals in other areas of the mill that were not affected by the reorganization.

Second, the appellants claim that the jury could have inferred age discrimination from evidence that Stewart was concerned about the rate of retirement at the plant. Next they contend the jury could have drawn a similar inference from Southwest's use of parttime supervisors shortly after their dismissal. The appellants also baldly assert that they were equally qualified as Barnes and Robbins, who were retained as predictive maintenance analysts. However, they do not suggest that Barnes and Robbins were unqualified.

Finally, the dismissed employees argue that the court usurped the jury's function by making a credibility choice with respect to the testimony of their expert witness, Dr. Warren F. Mazek. Dr. Mazek conducted a statistical analysis of Southwest's reorganization decisions and concluded that the chance of dismissing these same supervisors at random was 3%, a statistically significant figure in his opinion. As the district court observed, however, Dr. Mazek admitted that his statistical analysis failed to take into consideration all of Southwest's decisions in the reorganization, including those in the paper mill. Further, his analysis did not account for other variables relevant to reorganization decisions—education, experience and special skills, for example. Our reading of the record indicates that the trial judge did not reject Dr. Mazek's testimony. Rather, in reweighing the evidence, he simply did not assign it great weight when considered against the defendant's largely undisputed evidence.

Much of the evidence concerning Prescott's methods in making the reorganization recommendations is not in dispute. Given this large amount of uncontradicted evidence, the district court, in exercising its prerogative to reweigh the evidence in considering a motion for new trial, properly determined that the jury's verdict was against the great weight of the evidence.[3]

3. The appellants cite *Zaklama v. Mount Sinai* *Medical Center,* 842 F.2d 291, 295–96 (11th Cir.

**522**

We emphasize that a trial judge must defer to the jury's determination when issues of credibility are involved or the facts are in sharp conflict. *Hewitt,* 732 F.2d at 1556. Here we are not faced with such issues and we cannot say that the grant of a new trial was an abuse of discretion.

The judgment of the district court is AFFIRMED.

1988) for the proposition that they need not submit any evidence in rebuttal to demonstrate pretext and may convince the trier of fact that the employer's articulated reasons were pretexts for age discrimination solely through circumstantial evidence. Their reliance on *Zaklama,* however, is misplaced. The district court in that case granted the defendant's motion for judgment notwithstanding the verdict after, in effect, improperly reweighing the evidence. *See Watts,* 842 F.2d at 310 n. 5 (trial judge may not weigh the evidence when considering a motion for judgment notwithstanding the verdict). In the instant case, the district court, in considering a motion for a new trial, reweighed all the evidence—including the plaintiffs' circumstantial proof—and determined that the verdict was contrary to the great weight of the evidence.