INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Appellant, Cross Appellee,

v.

Dolores VALENTE, Charles Valente, d/b/a Mama's Deli, Defendants–Appellees, Cross–Appellants.

No. 90–3584.

United States Court of Appeals, Eleventh Circuit.

June 17, 1991.

Guy Burnette, Jr., Gerald T. Albrecht, Tampa, Fla., for plaintiff-appellant, cross-appellee.

Steven Waggoner, Lutz, Fla., Kelley W. Collier, Winter Haven, Fla., for defendants-appellees, cross-appellants.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge and HENDERSON, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant, Insurance Company of North America ("INA"), appeals the denial by the district court of its motions for a new trial

as to the issue of its liability under the terms of an insurance policy it issued to appellees, Dolores & Charles Valente ("the Valentes"), and with respect to the issue of intentional concealment and misrepresentations by the Valentes. The Valentes cross-appeal the district court's grant of INA's motion for judgment notwithstanding the verdict ("j.n.o.v.") on the issues of fraud and special damages. We find no merit to the Valentes' arguments regarding the district court's grant of the j.n.o.v. on the issues of fraud and special damages. Further, we find no merit to INA's arguments regarding the district court's denial of its motion for a new trial on the issues of intentional concealment and misrepresentations by the Valentes. Accordingly, we affirm the district court as to these issues without opinion. We do, however, find it necessary to address the issue of liability raised in INA's motions for new trial. On that issue, we find that the district court erred by not granting a new trial.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

This case concerns a fire which destroyed a restaurant called Mama's Deli, located in Lake Wales, Florida. The restaurant, owned by the Valentes, was insured under a policy of insurance issued by INA. After the fire, the Valentes made a claim for proceeds under the policy. Thereafter, INA conducted an investigation regarding the cause of the fire. This resulted in INA's denying the Valentes' claim. INA concluded that the Valentes intentionally caused or procured someone to cause the fire and that the Valentes misrepresented material facts during INA's investigation of the fire.

### B. *Procedural History*

INA filed a declaratory judgment action against its insured, the Valentes, seeking a declaration of non-liability for the insurance claim submitted as a result of the fire. INA averred that the Valentes committed arson and breached the insurance contract by intentionally concealing and misrepresenting material facts, specifically includ-

ing their involvement in setting the fire or causing it to be set by other persons at their direction and control, their financial condition, their prior insurance claims history, and their prior litigation history. INA also alleged that the Valentes were barred from recovering under the policy because their actions in intentionally setting the fire or causing the fire to be set by other persons were in breach of the policy of insurance which contained an exclusion for any dishonest act or omission done by either the insured or their employees. The Valentes counterclaimed for breach of the insurance contract and for an award of punitive damages for the alleged overt and dishonest dealings of INA.

At trial, the jury found that the fire was not an intentionally set fire and that the Valentes did not intentionally conceal or misrepresent material facts or circumstances concerning the insurance and the fire loss. The jury determined that the total loss to the structure of the restaurant was $6,533.39, and that the total loss for the contents of the restaurant was $36,818.70. The jury also found that the Valentes were entitled to special damages in the amount of $272,500.00, and punitive damages in the amount of $750,000.00.

INA filed a motion for j.n.o.v. and for new trial or remittitur. INA moved for j.n.o.v. and for new trial with regard to the specific issue of fraud on the part of INA and the excessiveness of the awards for special and punitive damages. INA filed a motion for new trial with respect to the issue of incendiarism and the material misrepresentations of the Valentes.

The district court granted INA's motion for j.n.o.v. on the issues of special damages and punitive damages. The district court denied INA's motion for new trial based on the issues of incendiarism and misrepresentation on the part of the Valentes.

## II. STANDARD OF REVIEW

When ruling on a motion for a new trial, a trial judge must determine "if in his opinion, 'the verdict is against the clear

weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984) (citations omitted). "[T]o assure that the judge does not simply substitute his judgment for that of the jury, ... we have noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.*

This court reviews the district court's denial of a motion for a new trial under the abuse of discretion standard. *Clyce v. St. Paul Fire & Marine Ins. Co.*, 850 F.2d 1398 (11th Cir.1987). This standard acknowledges the deference that is due the district court's "first-hand experience of the witnesses, their demeanor, and [the] context of the trial." *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir.1987). This level of deference is especially appropriate where a new trial is denied and the jury's determinations are left undisturbed. *Id.* In addition, when a new trial is sought on the basis that the verdict is against the weight of the evidence, our review is particularly stringent to protect the litigant's right to a jury trial. *Hewitt*, 732 F.2d at 1556.

## III. ANALYSIS

Under Florida law, in order to establish a prima facie case of arson for purposes of denying coverage under a fire insurance policy, the party bearing the burden must prove motive, opportunity and an incendiary cause of the fire which would allow reasonable people to conclude that the insured was guilty of the burning. *Cora Pub, Inc. v. Continental Casualty Co.*, 619 F.2d 482 (5th Cir.1980) (applying Florida law); *see also D.R. Mead & Co. v. Cheshire of Florida, Inc.*, 489 So.2d 830 (Fla.Dist.Ct.App.1986).

### A. Evidence Presented at Trial

INA argues that the clear and overwhelming evidence established that the fire was an intentionally set fire and the district court erred in not granting a new trial because the verdict rendered by the jury was contrary to the great weight of the evidence. *Williams v. City of Valdosta*, 689 F.2d 964 (11th Cir.1982). At trial, three primary witnesses testified on the issue of whether the fire was incendiary in origin. These witnesses were Ed Wiles, Deputy State Fire Marshall for the State of Florida; Bill Buckley, Senior Fire Investigator for Systems Engineering Associates ("SEA"); and Steve Osborn, an investigator with the Polk County Fire Department.

Deputy State Fire Marshall Wiles testified that he examined the fire within minutes after it was extinguished. He noted that all accidental causes for the fire were ruled out after an investigation of the scene. He further testified that the evidence indicated a rapidly spreading and intensely burning fire, characteristic of an intentionally set incendiary fire. Wiles testified that the most probable cause of the fire was an incendiary one which was set by a person or persons unknown. Wiles had been a Deputy State Fire Marshall for nine years. Prior to his employment with the State Fire Marshall's Office, he was employed by the City of Winter Haven as a fire fighter and spent fifteen years as a City Fire Marshall and three years as the Fire Chief for the City. He has 35 years experience in the suppression and investigation of fires. Wiles testified that as of the beginning of 1990, he had investigated over 1600 fires. He has testified as an expert witness in fire investigation on approximately 25 to 30 occasions and has been certified as an expert.

Bill Buckley is a Senior Fire Investigator with SEA, where he has worked for five and a half years. Prior to working with SEA, Buckley was employed with the Tampa Fire Department, where he was a supervisor for the arson squad for eight years. Buckley is certified as an instructor for the National Fire Academy in Fire and Arson Instruction. Buckley has been certified as an expert in the field of fire and arson investigation in the Thirteenth Judicial Cir-

cuit in Florida, both civil and criminal courts. Buckley testified that he uncovered numerous burn patterns in the dining room area as well as a "V" pattern on the wall with the underlying baseboards and floor tile being destroyed. Buckley described a table which had minor burn damage on the top but was completely charred on the underside. Buckley testified that these types of burn patterns are characteristics evidencing the presence of flammable liquids and accelerants. He further testified that small amounts of residue from accelerants were found in the southeast corner of the building. Buckley opined that the fire was deliberately set and an accelerant had been used to accelerate the rate of burning, thus causing the destruction that occurred.

The Valentes called as a witness Polk County Fire Investigator Steve Osborn. He was initially tendered by the Valentes as an expert "in the investigation of fires and cause and origin." Osborn admitted that at the time of the fire, he had been a fire investigator for approximately four months. Prior to trial, he had never testified as an expert witness in the field of fire investigation. Osborn was not certified by the International Association of Arson Investigators. He had difficulty answering simple questions regarding basic information about fires. Osborn concluded that the fire was, in his mind, "undetermined," stating that there was neither any determination of an accidental fire nor an intentional fire. After admitting that a fire could be only accidental or intentional, Osborn testified that he had eliminated all accidental causes of the fire.

At the conclusion of the trial, the jury was faced with three expert opinions as to the cause and origin of the fire. Wiles labeled the fire suspicious and believed that the fire was intentionally set; Buckley labeled the fire incendiary and believed that the fire was intentionally set and accelerants were used; and, Osborn labeled the fire undetermined (neither accidental nor incendiary) but admitted that he had ruled out all known accidental causes. Therefore, though he never actually said it, even Osborn's testimony implies an incendiary cause of the fire.

The jury also heard testimony from other witnesses. A passing motorist testified that, in a span of a few seconds, he saw the restaurant progress from darkness to burning flames. However, fire fighters who fought the fire testified that they neither saw nor smelled anything unusual at the scene. One of the Valentes' sons testified that he kept cleaning materials in the closet near where Buckley found the trace amounts of accelerant residue. Finally, the Valentes themselves testified that they had not burned down the restaurant.

INA claims that the great weight of evidence demonstrated that the Valentes had a strong motive to burn down the restaurant. Several witnesses testified that the restaurant was struggling financially. In addition, INA proffered testimony showing that the Valentes were having personal financial problems. They had numerous delinquent and unpaid accounts and bills. Several judgments had been entered against them. Their savings, which had been over $15,000.00, had dwindled to $0.00 one week before the fire. Also, though numerous other bills were months overdue, the fire insurance premium was paid five days before it was due and three days before the fire.

The Valentes, while admitting their financial problems, explained that they were in no worse financial shape than normal. They described the restaurant business in Florida as a seasonal business, where finances were difficult in the summer but improved in the fall. They argued that though things may have looked bleak at the time of the fire, their busy season was about to begin.

On the issue of opportunity, the evidence showed that the building was locked at the time of the fire. There was no evidence of a break-in or burglary attempt. The Valentes had sole access to the keys to the restaurant.

## B. Appellate Review

After a thorough reading of the record, we are persuaded that the great weight of evidence indicates that this was a case of arson. This standard, however, is not our standard of review. We review the district court's denial of a motion for new trial under an abuse of discretion standard. *Ard v. Southwest Forest Industries,* 849 F.2d 517 (11th Cir.1988). This level of deference is especially appropriate where a new trial is denied and the jury's determinations are left undisturbed. *Rosenfield,* 827 F.2d at 1498.

## C. Discussion

 The instructions given the jury split the question of liability into two sub-questions. The first was "... do you find by a preponderance of the evidence that the fire loss on September 8th, 1987, was the result of an intentionally set fire?" The second was "[d]o you find by a preponderance of the evidence that the fire loss of September 8, 1987, was an intentionally set fire caused by or on behalf of the defendants?" If the jury answered the first question in the negative, they were instructed that they need not consider the second. The jury found that the fire was not intentionally set and, therefore, did not reach the second question.

Even considering the great deference this court must grant the jury and trial judge, a thorough reading of the record clearly shows that this fire was an incendiary fire.[1] All three experts' testimony indicated that the fire was incendiary. There was no real evidence presented to refute INA's contention that the fire was incendiary in nature. The only evidence proffered was that of the fire fighters. They testified that they neither saw nor smelled anything unusual at the fire scene. This testimony, however, does not contradict the finding that the fire was incendiary. The fire had been burning for several minutes

before the fire fighters arrived; in addition, their attention was diverted to fighting the fire. Hence, there was no antithetic evidence to contradict the experts' testimony that the fire was incendiary in nature.[2] Therefore, the great weight of evidence clearly indicates that this was an incendiary fire.

Because the jury never reached the question of whether the Valentes caused the fire, it would be inappropriate for us to discuss that subject. Based upon our review of the record, we find that the district court abused its discretion in not granting a new trial on the issue of liability.

Accordingly, we reverse the district court's denial of INA's motion for new trial on the issue of liability. We affirm the district court in all other respects.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

1. Due to concerns regarding possible confusion over the criminal and civil standards of proof for arson, the parties agreed to use the term incendiary as a euphemism for intentional.

2. There was evidence from the Valentes that they did not set the fire. This evidence, however, relates to who caused the fire and does not refute the fact that the fire was incendiary in nature.