**Reuben E. REDD, Plaintiff–Appellant,**

v.

**CITY OF PHENIX CITY, ALABAMA; Roy K. Culpepper, individually and in his capacity as Chief of Police of Phenix City, Alabama; John Franklin; Brad Baker; Bobby Kilcrease, Diana Swanton, Dan Redmon and Joseph Watson, individually and in their capacity as officials of Phenix City, Alabama, Defendants–Appellees.**

**No. 90–7354.**

United States Court of Appeals, Eleventh Circuit.

June 28, 1991.

Gordon, Silberman, Wiggins & Childs, P.C., Robert L. Wiggins, Jr., Ann K. Norton, Birmingham, Ala., for plaintiff-appellant.

Charles E. Floyd, Phenix City, Ala., for defendants-appellees.

Before FAY and EDMONDSON, Circuit Judges and GARZA,* Senior Circuit Judge.

GARZA, Senior Circuit Judge:

Appellant sued Appellee City for discriminatorily not promoting him to Chief of Police and for discharging him. The judge directed a verdict against Appellant on his promotion claim after his case was presented. The jury found in Appellant's favor on the discharge claim. Though not renewing its motion for a directed verdict, the district judge granted Appellee a JNOV and in the alternative, a new trial. Finding the Appel-

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-tion.

lee did not renew its request for a directed verdict at the close of its own case we REVERSE the JNOV. We also find the directed verdict at the close of Appellants case was improperly granted, therefore we REMAND for a new trial.

## I. The Facts.

The Appellant, Reuben Redd, is an afro-american man hired by Phenix City, Alabama as a police officer in 1977. Beginning as a patrolman, he worked his way up to sergeant and then lieutenant. While in these supervisory positions, he was consistently ranked as good to excellent. His supervisors, and city officials, all told Redd he was doing an excellent job. Redd had no major problems with any of the Police Chiefs, until 1984 when Aubry Harbert was appointed. There was evidence introduced at the trial that Harbert was a racist.[1]

When Harbert abruptly retired as Police Chief in July 1987, the city appointed a white sergeant to the position of Acting Police Chief. This appointment was made despite the fact that plaintiff, a lieutenant, and two black captains were the senior most men on the force. No notice was given to anyone that Harbert was going to resign or that Sergeant Culpepper, a white, was going to become Acting Chief. There has never been a black Police Chief in Phenix City.

The City Manager admitted he hired Culpepper not so much on any set criteria but rather because he was an uncontroversial figure. Previous to Culpepper's selection, the City only hired from its lieutenants or captains. Two captains who Culpepper was promoted over were both black and had far greater experience and qualifications. The City Manager claims the offer was not made to Captain Roberson, the senior most black captain, because he did not believe he wanted the temporary position as Acting Chief. However, Roberson did make an application, never withdrew it, and later filed a charge with the Equal

Employment Opportunity Commission. The City never asked the other black captain, though there was no reason to believe he did not want the position. Redd, however, had made it known that he wanted the position. Though Culpepper had never applied for the job, the City asked him to accept the position.

Evidence was introduced that Acting Chief Culpepper set up surveillance of Redd. An officer testified that there was a "set up" to get rid of Redd, and it was known where and when they would do this one week ahead of time. The day after Redd was discharged, Culpepper was appointed as permanent Chief of Police. Redd was terminated because he stopped at a lounge one night and was charged with loitering. The City introduced testimony to the effect that Redd was not well thought of by his subordinates and he was derelict in his duties on the night in question.[2] Redd had testimony showing the only people who complained about him were some of the white officers. Evidence was shown that police often ate at places such as this lounge, he was not there longer than he should have been, and he was in an area where he was supposed to patrol. There are no allegations that Redd was drinking at the time. When Redd was leaving the lounge for a second time, Culpepper, who was keeping him under surveillance, drove up to him and scolded him for being at the lounge. Though discharges are generally made upon a Captain's recommendation, the next day Culpepper discharged him without the City Manager's knowledge. The City Manager admitted he did nothing to ascertain whether there was any truth in Culpepper's charges.

There was evidence introduced at trial that white employees who have done what the defendants claim Redd did were not discharged. Testimony suggested several white officers have violated a policy of going to the one and only lounge that is off limits and only received suspensions. Though white officers have been charged

---

1. The City Manager stated he thought Harbert was racially biased and doubted his ability to be fair with Redd and other black employees.

2. The night this incident occurred there was a jail break and police manpower was spread particularly thin.

with insubordination none have been discharged. The City, however, showed it had subsequently changed its disciplinary policy and was now beginning to apply it uniformly.

There was also evidence that Redd did have some disciplinary action taken against him while he was on the force and several of the other officers did not like him.

A jury of 7 whites and one black found Redd was discharged because of his race. The jury awarded him compensatory and punitive damages and stated he was now entitled to reinstatement and injunctive protection. The defendants moved for a directed verdict at the close of the plaintiff's case; as to Redd's promotional claim it was granted and as to the discharge claim, it was denied. At the close of evidence, the defendants failed to renew their motion for a directed verdict. Once the jury came back with a verdict in favor of the plaintiff, the trial court granted the defendants a JNOV because the verdict was not supported by substantial evidence. Alternatively, he granted a new trial if the JNOV is reversed. Redd appeals the trial court's abuse of discretion in granting a JNOV when it was not properly asked for and alternatively because the verdict was supported by the evidence taken in a light most favorable to the prevailing party.

## II. The Law.
### The JNOV

■ The district judge granted the City's motion for a judgment notwithstanding the verdict even though at the close of all the evidence they failed to move for a directed verdict. This runs contrary to Fed.R.Civ.P. 50(b) and the case law. The advisory note to 50(b) unequivocally states a "motion for a judgment not withstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence." The district judge would have us believe this is a "purely technical reason" and since the City made the proper motion at the close of plaintiff's case, the motion for a JNOV should be considered. *Mart Seitman & Assocs. v. R.J. Reynolds Tobacco Co.*, 837

F.2d 1527 (11th Cir.1988) acknowledged Rule 50(b); Reynolds failed to move for a directed verdict at the close of evidence. The court held a district court had no authority to entertain the aggrieved party's motion for a JNOV and therefore there would be no decision concerning the sufficiency of the evidence. *See also United States use and Benefit of Roper, IBG, Div. of Roper Corp. v. Reisz* 718 F.2d 1004, 1007 (11th Cir.1983) (holding that in the absence of a motion for a directed verdict at the close of evidence the party is foreclosed from making a motion for a JNOV and the district court has no authority to entertain such a motion); *Special Promotions, Inc. v. Southwest Photos, Ltd.*, 559 F.2d 430, 432 (5th Cir.1977) (stating even though the defendant moved for a directed verdict at the close of the plaintiff's case, it is insufficient unless it is renewed at the close of all evidence.) There is no doubt the district judge misconstrued *Seitman*. We are presented with a particularly clear and mechanical rule of law; the City did not comply and the district judge may not waive his magic wand dismissing a procedural requirement as a technicality. Therefore the district court's JNOV is reversed.

### Granting a new trial

We need not address the sufficiency of the evidence in light of the JNOV, however, since the trial judge granted in the alternative of the JNOV a new trial based upon the same reasoning, we will consider the evidence. We review decisions about granting new trials under the abuse of discretion standard. *MacPherson v. University of Montevallo*, 922 F.2d 766 (11th Cir.1991). However, "to assure that the judge does not simply substitute his judgment for that of the jury, ... we have noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great, not merely the greater weight of the evidence." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984) (*quoting Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir.1980)).

The district judge's order reads like a closing argument for the defense. It aptly, though mistakenly, points out contradictions the jury was entitled to draw. Since the City Manager, a defendant in this case, had previously helped Redd, why should he now turn against him. Though Redd was disciplined differently from two white police officers, it was justified because each case should be analyzed on its own merits. Additionally, the City decided to begin enforcing its disciplinary action more stringently and because Redd was a Lieutenant, more was expected of him. Besides this, the City had presented evidence showing it had reasonable cause to fire Redd. There were many complaints from Redd's subordinates which were not shown to be racially motivated, no evidence was shown that Culpepper acted because of racial motivation and therefore Redd's discharge was for a legitimate, nondiscriminatory reason.

■ When a district court grants a new trial because the verdict is against the weight of the evidence, this court's review will be extremely stringent to protect a party's right to a jury trial. *See Hewitt,* 732 F.2d at 1556; *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir.1982). This is particularly true when the new trial is premised upon sufficiency of the evidence as opposed to some factor which may have infected the evidence itself.[3] While the district judge addressed negative inferences which the jury could have drawn, he declined to acknowledge any of the positive testimony Redd presented. "[T]he district judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made

by the jury." *Rosenfield v. Wellington Leisure Products, Inc.,* 827 F.2d 1493, 1498 (11th Cir.1987) (*citing Williams v. City of Valdosta,* 689 F.2d 964, 973–74 n. 7 (11th Cir.1982)). When there is some support for a jury's verdict, it is irrelevant what we or the district judge would have concluded.

*MacPherson v. University of Montevallo,* 922 F.2d 766 (11th Cir.1991) affirmed the district court's granting of a new trial even though it reversed a JNOV. The grant of a new trial was approved of because it was based upon "considerably more than the premise that the verdict was against the weight of the evidence." *Id.* at 777. In the case at bar, the district judge alternatively grants a new trial merely "in the event of the necessity therefor." If the district judge felt a new trial was proper he should have enunciated his reasoning. His analysis of the motion for a JNOV does not support his granting a new trial when he only questions the sufficiency of the evidence. His opinion does not support his alternative order.

■ The district court stated the motive for Redd's discharge was not improper because even if he established a prima facie case of discrimination, "the Defendants established, with no evidence to the contrary, that Plaintiff's discharge was for a legitimate nondiscriminatory reason. *Anderson v. Savage Laboratories,* 675 F.2d 1221 (11th Cir.1982)." This bold statement hardly merits consideration in light of the record. There was ample testimony suggesting bad faith in the City's failure to consider Redd or the two Black captains.[4] Direct evidence is not required to prove an

---

**3.** If a trial judge grants a new trial because of prejudice or due to an excessive jury award, then this court's review will not be as rigorous. This pays tribute to our jury system. Our system of justice seeks a jury verdict arising from a trial free of impropriety. *See McWhorter v. City of Birmingham,* 906 F.2d 674, 677 (11th Cir. 1990). A certain degree of harmless error will not corrupt a jury verdict because the error is just that, harmless. However when prejudice occurs, the jury is stripped of a proper opportunity to deliberate and the trial judge is justified in granting a new trial. *See Id.; O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1308 (5th 1977). The standard used in reviewing excessive jury awards is when the award "shocks the con-

science of the court." *Simon v. Shearson Lehman Bros., Inc.,* 895 F.2d 1304 (11th Cir.1990). In such cases, the judge is justified in acting when the jury's verdict falls outside the realm of reason.

**4.** The city manager testified he did not offer Roberson, one of the black captains, the job of acting chief of police because he didn't think Roberson wanted it, and yet later the city manager said he didn't offer Roberson the position as acting chief of police because he wanted to give that position to someone not interested having that job permanently.

employer's explanation for the employee's discharge pretextual; circumstantial evidence is sufficient. *Zaklama v. Mt. Sinai Medical Center,* 842 F.2d 291, 296 (11th Cir.1988). Redd certainly introduced evidence to question the motives for his discharge.

The Supreme Court has said the underlying purpose of Title VII is to "make whole" victims of unlawful discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). To accomplish this a district court is empowered with broad discretionary powers to effectuate a remedy. This is not to limit appellate review but rather to allow the creation of the "most complete relief possible." *Id.* at 421, 95 S.Ct. at 2373; *See also Darnell v. City of Jasper,* 730 F.2d 653 (11th Cir.1984). The district court upon remand shall reinstate the jury award and make all necessary equitable orders including but not limited to reinstatement.

### The Directed Verdict on the Promotion claim

Footnote 3 of the district court order claims Defendant's motion for a directed verdict on the failure to promote claim was granted as was agreed to by all parties at the close of plaintiff's case. Redd denies he ever agreed to dismiss this claim and beyond that, there were insufficient grounds upon which to grant a directed verdict.

At the close of Redd's case, the City made a motion for a directed verdict on the failure to promote claim because the evidence showed Redd would not have been promoted because

> MR. FLOYD [The City's attorney]: [T]here were several other people in the same class as him with equal or better qualifications who would have been employed before him....
>
> THE COURT: You talking about the chief's job?
>
> MR. FLOYD: Yes, sir. Employment for the chief of police.
>
> THE COURT: I think ... You don't want to be heard again on that?

> MR. QUINN [Redd's attorney]: No, sir.
>
> THE COURT: All right. The motion will be granted.

.    .    .    .    .

> THE COURT: .... And I think the 1983 claim as to the promotion charge goes out, too, whether you meant it or not. To avoid confusion, I think the proper thing for me to do is to put it out now because of our prior conversation.
>
> MR. QUINN: It simplified matters.
>
> THE COURT: I try not to litigate for a party, but I think it is clear from our prior conversation that we are fairly well in agreement on that. I don't mean that you can't raise the point if you want to later. But I will dismiss or direct a verdict on the question of denial of the chief's job.

The conversation the court refers to was taken off the record so this is all we have to decide if there was agreement. From the transcript it seems Redd was opposed to this motion. There is no agreement in the record which Footnote 3 seems to refer to. At best it seems Redd's attorney was acquiescing in the district judge's decision and trying to make the most out of the case. Therefore we can now see if the district court properly granted the directed verdict.

When reviewing a district court's motion for a directed verdict, not only must the evidence be viewed in a light most favorable to the nonmoving party, but all reasonable inferences must be drawn in that party's favor. *Verbraeken v. Westinghouse Electric Corp.,* 881 F.2d 1041, 1044 (11th Cir.1989). Redd had established a prima facie case. He was a member of a minority, he was qualified and applied for the position, he was rejected despite his qualifications, and the position remained open after his rejection or was filled by a person outside the protected group. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). However,

> grants of directed verdicts for defendants at the close of plaintiff's evidence are proper even if the plaintiff has made

out a prima facie case as long as plaintiff's case-in-chief also contains evidence sufficient to meet defendant's burden of production and the evidence overall at the close of plaintiff's case is insufficient to allow a rational jury to find for the plaintiff.

*MacPherson v. University of Montevallo,* 922 F.2d 766, 722 n. 10 (11th Cir.1991). Though Redd's survival past directed verdict was not ensured, there was no persuasive evidence presented to preclude discrimination playing a part in the City denying Redd the Chief's position. (see supra for discussion on other qualified black officers.) There was not sufficient evidence before the court at the end of Redd's case-in-chief to allow the granting of a directed verdict.[5]

The close of plaintiff's case was not the proper time for such a motion. Though the City claims the testimony of Redd's witness' showed he would not have been hired because there were other equally or more qualified black candidates, there was no testimony from a decision maker. Without that testimony there is no reason to conclude the City would have made the decision it did.

### III. Conclusion.

The district court erred when it granted the JNOV, and the directed verdict during the trial. The grant of a new trial also was unwarranted. Therefore the JNOV and the alternate granting of a new trial are REVERSED and the jury verdict and award of damages is reinstated. We REMAND to the district court to grant appropriate equitable relief including but not limited to reinstatement. The directed verdict eliminating the promotional claim was also unwarranted, therefore, we REMAND, granting a new trial on that issue.

---

5. In his brief, Redd asserts the *McDonnell Douglas* analysis should not be applied because there was direct evidence of discrimination, which ultimately would place a higher burden on the City. While Redd's case suggests there may have been direct evidence, we need not address that issue because the directed verdict was improperly granted. Therefore Redd may advance any permissible theory at the subsequent trial we are granting him.